## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | | |
|---|---|---|
| **AGNES MILLEN,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GEORGIA RENEWABLE POWER,** | ) | Civil Action No. 3:21-cv-00042-CDL |
| **LLC; GRP FRANKLIN, LLC d/b/a GRP** | ) | |
| **FRANKLIN I, LLC; VEOLIA ENERGY** | ) | |
| **OPERATING SERVICES, LLC; and** | ) | |
| **JOHN DOE CORPORATION 1-20,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANTS GEORGIA RENEWABLE POWER, LLC AND
### GRP FRANKLIN I, LLC d/b/a GRP FRANKLIN I, LLC'S MEMORANDUM OF
### LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

M. Anne Kaufold-Wiggins
Georgia Bar No. 142239
awiggins@balch.com
Hugh Peterson III
Georgia Bar No. 574212
hpeterson@balch.com
Brittany Temple
Georgia Bar No. 627292
btemple@balch.com
**BALCH & BINGHAM LLP**
30 Ivan Allen Jr. Blvd. N.W., Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656

Edwin Schwartz
Georgia Bar No. 631037
**SWEETNAM & SCHWARTZ**
1050 Crown Pointe Parkway, Suite 500
Atlanta, Georgia 30338
Telephone: (470) 395-7842
Facsimile: (770) 234-6779
ess@mseslegal.com

*Attorneys for Defendants Georgia
Renewable Power, LLC and GRP Franklin,
LLC d/b/a GRP Franklin I, LLC*

## <u>TABLE OF CONTENTS</u>

Page

**INTRODUCTION**.................................................................................................1

**FACTUAL BACKGROUND** ...............................................................................3

    I.    The Plant's History and Location ................................................3

    II.    The Legality of the Plant.........................................................5

    III.    The Plant's Startup and Continued Operations.........................5

    IV.    Plaintiffs' Personal Experiences ...............................................8

**ARGUMENT AND CITATION OF AUTHORITY** ............................................8

    I.    Legal Standard ........................................................................8

    II.    All of Plaintiffs' Nuisance Claims Fail....................................10

        *A.*    The Plant Is Not a Nuisance As a Matter of Law. ....................10

        *B.*    The Plant Cannot be a Nuisance after June 2021 under O.C.G.A. § 41-1-7. ....................................................................14

        *C.*    There Is No Evidence Showing the Plant is a Nuisance After April 2022.......................................................................16

    III.    Plaintiffs' Negligence Claims Fail as a Matter of Law............17

    IV.    Summary Judgment is Proper on Plaintiffs' Punitive Damage Claims. ...............19

    V.    Plaintiffs' Claims for Attorneys' Fees also Fail. ....................20

    VI.    The GRP Defendants Are Entitled to Summary Judgment on All Claims Because Plaintiffs Failed to Disclose Any Amount or Computation of Damages....................................................................21

    VII.    Individually, Plaintiffs Lack Evidence to Support Some of Their Claims. ..........27

        *A.*    With the exclusion of Biggers's opinions, all Plaintiffs have failed to show diminution in their real property values. ...........................27

        *B.*    All Plaintiffs' claims for damages caused by potentially feelable vibrations fail. ........................................................27

        *C.*    3:21-cv-42-Millen ................................................28

        *D.*    3:21-cv-43-Nesmith ...............................................29

        *E.*    3:21-cv-44-Sweatman ...............................................30

*F.*    3:21-cv-45-Wilson ...................................................................30

*G.*   3:21-cv-46–Alexander (Powers) ...........................................31

*H.*   3:21-cv-47-Elrod ..................................................................31

*I.*    3:21-cv-48–Baker ................................................................32

*J.*    3:21-cv-49-Ayers .................................................................33

*K.*   3:21-cv-50–Mark and Mayra Blalock...................................33

*L.*    3:21-cv-51-Michael Blalock ................................................33

*M.*  3:21-cv-52–Abbs/Bellamy ..................................................34

*N.*   3:21-cv-53–Gettys ..............................................................35

*O.*   3:21-cv-54–Smith ...............................................................36

*P.*    3:21-cv-55–Pruitt ................................................................36

*Q.*   3:21-cv-56–Schiffer ............................................................37

*R.*   3:21-cv-57–Pearcy ..............................................................38

*S.*    3:21-cv-58–O'Connor .........................................................38

*T.*    3:21-cv-59–McCall ............................................................39

*U.*   3:21-cv-60–Higgins ............................................................39

*V.*   3:21-cv-61–Jinks ...............................................................40

*W.*  3:21-cv-62–Hart ................................................................40

*X.*   3:21-cv-63–Harris ..............................................................40

*Y.*   3:21-cv-64–Dickens ...........................................................41

*Z.*   3:21-cv-65–Langston ..........................................................42

**CONCLUSION** ....................................................................................**42**

**CERTIFICATE OF SERVICE** ............................................................**46**

**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | | |
|---|---|---|
| **AGNES MILLEN,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GEORGIA RENEWABLE POWER,** | ) | **Civil Action No. 3:21-cv-00042-CDL** |
| **LLC; GRP FRANKLIN, LLC d/b/a GRP** | ) | |
| **FRANKLIN I, LLC; VEOLIA ENERGY** | ) | |
| **OPERATING SERVICES, LLC; and** | ) | |
| **JOHN DOE CORPORATION 1-20,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS GEORGIA RENEWABLE POWER, LLC AND
GRP FRANKLIN I, LLC d/b/a GRP FRANKLIN I, LLC'S MEMORANDUM OF
LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Georgia Renewable Power, LLC and GRP Franklin, LLC d/b/a GRP Franklin I, LLC (collectively, the "GRP Defendants") file this Memorandum of Law in Support of their Motion for Summary Judgment on all Plaintiffs' claims under Federal Rule of Civil Procedure 56.

**INTRODUCTION**

The GRP Defendants provide renewably sourced electricity to Georgia consumers through a biomass power plant located in Franklin County, Georgia (the "Plant"). To produce much-needed electricity, the Plant, which has been in operation since 2019, burns wood chips to boil water to produce steam to turn a turbine. This process necessarily produces a certain amount of sound, steam, and woody odors. On November 23, 2020, these twenty-four lawsuits were simultaneously filed against the GRP Defendants, who own the Plant, and Veolia Energy Operating Services, LLC ("Veolia"), who operates the Plant, in the Superior Court of Franklin County, Georgia.   The specific allegations among the twenty-four complaints differ slightly, but they all contain the same four counts: (I) Nuisance; (II) Negligence; (III) Punitive Damages; and (IV) Attorneys' Fees.

Defendants removed the twenty-four cases to this Court, which consolidated them. Discovery is now complete, and a review of the evidence in the record shows the GRP Defendants are entitled to summary judgment on all of Plaintiffs' claims.

Plaintiffs' nuisance claims fail because the Plant cannot be a nuisance when it is a legal operation located in an area zoned for, and uniquely appropriate for, industrial use. *See Kempton v. S. Flavor Real Estate, L.P.*, 866 S.E.2d 862, 864 (Ga. Ct. App. 2021). Alternatively, the Plant cannot be considered a "continuing" nuisance beyond June 2021 pursuant to O.C.G.A. § 41-1-7(d) because of its connection to the forest industry. *See* O.C.G.A. § 41-1-7(d). Similarly, by April 2022, the GRP Defendants had completed a series of installations of advanced noise reduction measures, and Plaintiffs have no evidence of any sustained "hurt, inconvenience, or damage" after that date. *See generally* O.C.G.A. § 41-1-1.

Plaintiffs' negligence claims also fail because no evidence shows the GRP Defendants breached any duty. Indeed, Plaintiffs have not even established what particular duty the GRP Defendants owe. The reasonable design, construction, and operation of a biomass fueled power plant are concepts well beyond the knowledge of a layman, and Plaintiffs have presented no expert capable of testifying to the appropriate standard against which the GRP Defendant's conduct can be judged. Moreover, the evidence establishes the GRP Defendants complied with applicable regulations and took voluntary efforts to mitigate the necessary effects of operating the Plant.

Concerning Plaintiffs' claims for punitive damages and attorneys' fees, both fail because they are derivative of Plaintiffs' other claims and there is no evidence of willful misconduct, bad faith, or any other wrongful conduct upon which to base an award of those damages and fees.

Beyond these substantive issues, a procedural issue impacting all Plaintiffs is their failure to provide a specific amount and computation for each category of damages in their Initial Disclosures or their discovery responses. Plaintiffs' omission and failure to supplement to include

an amount of damages sought and a computation of the amount violates their discovery obligations, Federal Rule of Civil Procedure 26, and is neither substantially justified nor harmless. As a result, summary judgment should bar Plaintiffs from presenting any evidence as to the amount of damages they seek.

Finally, in addition to the universal issues mentioned above, Plaintiffs' cases suffer from individual evidentiary failures as detailed below in the Argument Section VII based on the particular facts of each case. For example, in some cases, (1) Plaintiffs' allegations contradict their own testimony and experience; (2) Plaintiffs have no evidence to support their claims their properties have diminished in value; and/or (3) Plaintiffs have no evidence to support allegations the sounds coming from the Plant are causing vibrations at their properties. Taken on their own or as a whole, Plaintiffs' claims fail, and the GRP Defendants are entitled to summary judgment.

## FACTUAL BACKGROUND[1]

I.    **The Plant's History and Location**

The Plant is a biomass solid fuel facility owned by the GRP Defendants and operated by Veolia. Davis Dep. at 12:2-22; 24:4-8. GRP Franklin, LLC is the parent company of Georgia Renewable Power, LLC. *Id*. at 12:2-9.

Allen Powell, State Representative for Franklin County, and Frank Ginn, Senator for Franklin County, encouraged the construction of the Plant in Franklin County to improve the economy of the County by creating jobs and increasing tax revenue. *Id*. at 22:14-21. At that time,

---

[1] Filed contemporaneously is a separate and concise statement of the material facts to which the GRP Defendants contend there is no genuine dispute to be tried in compliance with United States District Court for the Middle District of Georgia Local Rule 56. That Statement of Undisputed Material Facts includes the record citations and excerpts of the cited material for the Court's ease of reference. Complete deposition transcripts, including exhibits, and other cited discovery materials also are being filed contemporaneously, so the Court has a complete record in considering the pending Motions.

the area where the Plant is located was already zoned commercial industrial, which is the heaviest commercial zoning district in Franklin County. *See* Exhibit 153 of Deposition of David Nelson, ("Expert Report of Ian Brewe"), at 5-1; Exhibit 49 of Deposition of James Nesmith ("2015 Franklin County Board of Commissioners Meeting Minutes"). Moreover, as shown on the map below,[2] most of the surrounding area, which is circled in yellow, is zoned for agricultural or commercial use—there are poultry farms, a landfill, a cabinet-making operation, and Interstate 85 in the immediate vicinity. *See* Expert Report of Ian Brewe, at 5-1.



---

[2] This is a portion of the Franklin County, Georgia, Official Zoning Map, available at: https://www.franklincountyga.gov/sites/g/files/vyhlif6256/f/uploads/franklinbasemap2x2_2022_06_05.pdf (last visited Sept. 2, 2022). The Court may take judicial notice of documents available on Franklin County's website because the accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201.

The GRP Defendants obtained all of the necessary permits for the Plant in 2015, and requested rezoning of additional land from agricultural intensive to commercial industrial, the same as the Plant, for parking lanes for trucks unloading near the site. *See* Expert Report of Ian Brewe, at 5-1; 2015 Franklin County Board of Commissioners Meeting Minutes.

A biomass plant makes power by burning biomass that then heats up water, which turns into steam and drives the turbine generator. Tanis Dep. at 21:8-17. At the Plant in Franklin County, the biomass burned is wood. *Id*. at 21:22-22:2. Whether the wood is from the field or crushed wood chips, the Plant is burning wood. *Id*. The need to supply the Plant with wood was a key reason Franklin County was chosen for its location—with wood-burning biomass plants, a fiber study must be done to ensure there is enough woody biomass in the area surrounding the Plant to supply the needs of the Plant. Groves Dep. 20:20-22:6. GRP could not have built a biomass plant in the desert; it must be near the wood supply. *Id*.

## II.     The Legality of the Plant

Franklin County's Nuisance Ordinance does not contain any specific restrictions on sound levels or chemical emissions. *See* Franklin County Nuisance Ordinance. Nor are there any statewide or national standards except for workplace safety requirements and the Plant's state-issued air quality permit, neither of which have been violated. *See* Brewe Dep. at 36:2-16. Thus, as Plaintiffs' own expert testified, "[t]here's nothing illegal" about the operations of the Plant. Nelson Dep. at 52:16-20. The GRP Defendants have made continuous efforts to address community concerns and eliminate emissions at the Plant, but even prior to any of the mitigation measures, the GRP Defendants complied with all applicable ordinances, rules, and regulations.

## III.    The Plant's Startup and Continued Operations

Construction of the Plant lasted from July 2017 until the commissioning period began in May of 2019, and the Plant went online in June of 2019. Davis Dep. 32:4-12; Jones Dep. 63:21-

23. Due to issues with startup, the commissioning period lasted until February or March of 2020, despite an anticipated commercial operation date of December 14, 2019.  Davis Dep. at 17:9-12. Most large, complicated, solid fuel facilities have issues during the first year of startup, so the issues the Plant experienced in 2019 are typical in the industry.  Abbott Dep. at 26:16-27:3; Groves Dep. at 23:26-25 (Q: "In your experience is that [issues with sound] typical of a startup period?" A: "Absolutely.").

The Plant had some isolated incidents during startup. For instance, there was a large collection of biomass that piled up at the Plant and, to prevent the pile from catching fire, Veolia watered the biomass pile to reduce its temperature, which caused runoff to nearby streams in October 2019 and resulted in the issuance of a Consent Order. Groves Dep. 59:6-60-20. Additionally, as the result of a faulty sensor, the Plant received a citation for potentially releasing particulate matter from its smokestack on November 24, 2019.  *See* Letter from Environmental Protection Division to Carey Davis, at GRP 000190. As the Plant's operation improved, and the complications during startup were resolved, the sound level from the Plant improved.  Davis Dep. at 128:18-129:12; Groves Dep. at 23:12-22; Vanessa Jinks Dep. at 19:2-13 (describing the sound as different when the Plant first opened). Some level of sound is a necessary part of the operation of every industrial facility.  Davis Dep. at 141:15-17.

Initial complaints from neighbors surrounding the Plant began during commissioning in 2019.  Davis Dep. at 33:9-22. The complaints consisted mostly of concerns about the noise during the commissioning period in the summer of 2019.  Davis Dep. at 34:7-12. As the complaints were received, the GRP Defendants and Veolia employees spoke to the Plant neighbors and attempted to address their concerns.  *See* Davis Dep. at 35:13-36:18; Tanis Dep. at 23:21-24:4. Although their perceptions of the intensity of the problems varied, all parties agreed the concerns needed to be addressed to help the community.  Davis Dep. at 58:19-59:3.

6

On December 18, 2019, the Franklin County Board of Commissioners sent a "Notice of Violation" to GRP Franklin indicating the Board's conclusion "the Franklin County Nuisance Ordinance is being violated by the Plant's sound and chemical emissions." Franklin County Notice of Violation, at GRP 000198. The Notice of Violation cited to § 18-6 of the Franklin County Nuisance Ordinance (*Id.*), which allows the Commission to request an abatement of certain conditions, but contains no specific limit on noise levels or other emissions. *See* Franklin Cty., Ga., Ordinance § 18-6.[3]

In response to the noise complaints, the GRP Defendants had Veolia conduct a sound study in late 2019. Davis Dep. at 79:20-23. The purpose of the study was to identify sound sources and determine sound levels. Davis Dep. at 86:10-87:4. The GRP Defendants then continued investigating the source of the sound by hiring engineers and consultants to identify ways to mitigate the sound from the Plant. Davis Dep. at 87:11-18. A list of mitigation measures were implemented from December 2019 to the summer of 2022 as a response to community feedback and in a good faith attempt to eliminate certain sounds from the Plant. Davis Dep. at 57:5-74:11; Abbott Dep. 37:1-38:5. The voluntary sound-abatement efforts resulted in a measurable reduction of the audible sound emitted from the Plant, and even numerous Plaintiffs agree the sound has improved. Report of Ian Brewe, at 6-3; Vanessa Jinks Dep. at 21:12-23 (indicating the last time she heard a loud roar from the Plant was summer 2021); Baker Dep. at 52:13-25 (describing the noise as moderate since October 1, 2021); Nelson Dep. at 176:22-25

---

[3] This ordinance is available at http://franklincountyga.test-civiccms.acsitefactory.com/sites/g /files /vyhlif6256/f/uploads/fc_nuisance_ordinance_2002.pdf (last visited Sept. 29, 2022). The Court may take judicial notice of documents available on Franklin County's website because the accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201.

Most recently, the GRP Defendants took two additional significant mitigation measures: (1) the installation of a silencer on the induced draft fans in September 2021, and (2) new conveyors in April 2022 that allowed the bypass of the fuel dryers at the Plant. Davis Dep. at 69:12-20; 134:3-14; Abbott Dep. at 30:23-25. The fuel dryers had a number of operating fans that were retired at the time of the implementation of the new conveyors.  Abbott Dep. at 31:9-14.

## IV.   Plaintiffs' Personal Experiences

Each Plaintiff testified about their individual experiences with the Plant. Additional facts regarding each individual Plaintiff's claims, as testified to in their depositions, are discussed in the Argument Section VII below to avoid duplication and concisely address the additional, particular reasons summary judgment is appropriate as to each Plaintiff. These facts are also set forth fully in the separate Statement of Undisputed Material Facts filed with this Motion.

## ARGUMENT AND CITATION OF AUTHORITY

## I.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Folsom v. Kawasaki Motor Corp. U.SA.,* 509 F. Supp.2d 1364, 1369 (M.D. Ga. 2007).  The movant "bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "This may be accomplished by showing that the nonmoving party will be unable to 'establish the existence of an element essential to the [nonmoving] party's case, and on which the [nonmoving party] will bear the burden of proof at trial.'" *Folsom,* 509 F. Supp.2d at 1370 (citing *Celotex Corp.*, 477 U.S. at 322). If the movant meets this burden, the burden of production shifts to the non-moving party to show there is a genuine issue of material fact or that the movant is not entitled

to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 324. In doing so, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In determining whether a genuine issue of material fact exists to defeat a motion for summary judgment, the court views the evidence in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A factual dispute is "genuine" only if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248. A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Id.* The requisite "evidence must consist of more than mere conclusory allegations or legal conclusions." *Gilham v. Athens Land Trust, Inc.,* 510 F.Supp.2d 1349, 1356 (M.D. Ga. 2007).

In all events, if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is appropriate because "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23. "In other words, the relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or the whether it is so one-sided that one party must prevail as a matter of law.'" *Folsom,* 509 F. Supp.2d at 1370 (citing *Anderson,* 477 U.S. at 251-52).

## II.   **All of Plaintiffs' Nuisance Claims Fail.**

The first count of all twenty-four complaints is a claim for nuisance under Georgia law.[4] Those claims all fail because the Plant is a legal operation conducted in an appropriate area. *See Kempton,* 866 S.E.2d at 864. The claims also fail to the extent Plaintiffs claim the Plant is a nuisance after either June 2021—because of a statutory protection from nuisance liability for operations related to agriculture—or, at the latest, April 2022—because there is no evidence supporting the Plant is a nuisance after that date.

### A.   **The Plant Is Not a Nuisance As a Matter of Law.**

O.C.G.A. § 41-1-1 provides that "the fact that [an] act done may otherwise be lawful shall not keep it from being a nuisance."  Applying that principle, there are a number of Georgia cases holding that legal conduct constituted a nuisance.  *See, e.g.*, *Poultryland, Inc. v. Anderson*, 37 S.E.2d 785, 790 (Ga. 1946) (poultry farm); *Asphalt Products Co. v. Marable*, 16 S.E.2d 771, 772 (Ga. Ct. App. 1941) (asphalt factory).  Nevertheless, in Georgia for over 100 years, the law has been "that which the law authorizes to be done, if done as the law authorizes, cannot be a nuisance." *Kempton v. S. Flavor Real Estate, L.P.*, 866 S.E.2d 862, 862 (Ga. Ct. App. 2021), *cert. denied* S22C0507 (Ga. Aug. 9, 2022); *see also Ga. R. & Banking Co. v. Maddox*, 42 S.E. 315, 315 (Ga. 1902) ("Where a railroad terminal yard is located, and its construction authorized, under statutory powers, if it be constructed and operated in a proper manner, it cannot be adjudged a nuisance."). In that vein, last year, the Georgia Court of Appeals held a light-emitting greenhouse and a protest-inspiring, abortion clinic were not nuisances. *See Kempton*, 866 S.E.2d at 864; *McBrayer v. Governors Ridge Off. Park Ass'n, Inc.*, 860 S.E.2d 58, 63 (Ga. Ct. App. 2021).

---

[4] As this is a diversity suit, "state law governs substantive issues."  *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1299 (11th Cir. 2018).

The Court of Appeals addressed these seemingly contradictory rules in *Kempton*. There, the court noted all of the cases holding legal conduct to be a nuisance involved businesses that were lawful but nevertheless inconsistent with the area in which they were located. *See Kempton*, 866 S.E.2d at 864 (majority opinion). For instance, those cases involved a poultry farm "located in a populous section of the City of Gainesville, Georgia, and in the midst of the places of business and homes occupied by the petitioners," *Poultryland, Inc.*, S.E.2d at 786, a venereal disease clinic in a residential area, *Benton v. Pittard*, 31 S.E.2d 6, 7 (Ga. 1944), an asphalt factory "in a *residential* section of the Town of Gray," *Asphalt Products Co.*, 16 S.E.2d at 772, and an undertaker in a residential area, *McGowan v. May*, 196 S.E. 705, 705 (Ga. 1938).

In contrast, the cases holding lawful (albeit noxious) conduct was not a nuisance involved businesses that were consistent with their locations. This meant a greenhouse emitting significant amounts of light in a rural area, *Kempton*, 866 S.E.2d at 862-63, an abortion clinic attracting protests in an office park, *Governor's Ridge*, 860 S.E.2d at 63, and a chip mill making noise at night in a location the county expressly zoned for the operation of the mill, *Effingham Cnty. Bd. of Comm'rs v. Shuler Bros.*, 595 S.E.2d 526, 528 (Ga. Ct. App. 2004), were not nuisances as a matter of law. By distinguishing the cases this way, a simple rule emerges: lawful conduct carried out in a lawful manner in a location where such conduct is expected to occur is not a nuisance. *See Kempton*, 866 S.E.2d at 864.

Here, the Plant is lawful, its operations are carried on in a lawful manner, and it is located in a place where such conduct is expected to occur. *See* Brewe Dep. at 36:2-16; Nelson Dep. at 52:16-20. In fact, the GRP Defendants were encouraged to locate the Plant in Franklin County by the county board and state legislators. Davis Dep. at 22:14-21. There is no law or regulation prohibiting the operation of a biomass power plant in Franklin County, Georgia. There is no reasonable dispute about the lawfulness of the operations at the Plant. A power plant is going to

11

make noise and create other emissions—those are necessary consequences of its operation.  Davis Dep. at 141:15-17.  Such "ordinary and necessary" consequences of lawful activity occurring where it belongs are not nuisances.  *See Maddox*, 42 S.E. at 315 ("[I]njuries and inconveniences to persons residing near [a railyard], from noises of locomotives, rumbling of cars, vibrations produced thereby, and smoke, cinders, soot, and the like, which result from the ordinary and necessary, therefore proper, use and operation of such a yard, are not nuisances, but are necessary concomitants of the franchise granted.").  Thus, only if the Plant is making noise or releasing emissions unlawfully or in a manner not normal or necessary to the operations of the Plant can the Plant be considered a nuisance. *See Shuler Bros.*, 595 S.E.2d at 528 (holding because a wood "chip mill was a legal enterprise operated as the law authorized, it cannot have been a nuisance.").

There is no evidence any of the alleged sounds, odors, light, or smoke produced by the Plant are not necessary consequences of the Plant's operations.  Concerning the lawfulness of that conduct, there is no reasonable dispute that the GRP Defendants and Veolia obtained all necessary permits and the Plant is in compliance with all federal and state regulations relating to noise and other emissions.  *See* 2015 Franklin County Board of Commissioners Meeting Minutes, at GRP 000096-97; Brewe Dep. at 36:2-16; Nelson Dep. at 52:16-20.  While there is evidence in the record relating to alleged incidents or potential incidents of non-compliance, intermittent incidents of on-compliance do not render the Plant a nuisance.  *See City of Bowman v. Gunnells*, 256 S.E.2d 782, 784 (Ga. 1979) (noting an act "must be of some duration" to constitute a nuisance).[5]

---

[5] Concerning the violation notice received as a result of the faulty sensor that, at most, suggests there was the potential for a violation. A nuisance must be based on more than potentiality.  *See J.N. Legacy Grp., Inc. v. City of Dallas*, 745 S.E.2d 721, 729 (Ga. Ct. App. 2013) (holding "the mere possibility or potential" for harm is not sufficient to constitute a nuisance).

There is also no evidence to support Plaintiffs' claims that the Plant's operations violate any Franklin County ordinances. The Franklin County Board of Commissioners did send a "Notice of Violation" to GRP Franklin indicating the Board's conclusion "the Franklin County Nuisance Ordinance is being violated by the Plant's sound and chemical emissions."   Franklin County Notice of Violation, at GRP 000198. However, that ordinance does not contain any specific restrictions on sound levels or chemical emissions. *See* Franklin Cty., Ga., Ordinance § 18-3 (enumerating "[c]onditions constituting nuisance").  Rather, the ordinance only allows the County to abate a nuisance *per se*, which the Plant undisputedly is not,[6] or a nuisance that presents an urgent, immediate risk of harm to the public, which the Plant does not.  Its nebulous guidelines, which make no mention of sound at all, cannot establish a benchmark for reasonable, lawful conduct. *See id*.  Accordingly, as Plaintiffs' own expert testified, "[t]here's nothing illegal" about the operations of the Plant.  Nelson Dep. at 52:16-20.

Finally, the Plant is located in an area where this kind of conduct (the operation of a power plant) is to be expected.   In this regard, *Kempton* provides a helpful analogy.   There, the court concluded the defendant was not liable for nuisance because it was "operating its greenhouse in a location to which it was specifically recruited and that [was] zoned for agricultural operations." 866 S.E.2d at 864 (cleaned up); *see also Shuler Bros., Inc.*, 595 S.E.2d at 528 ("Shuler Brothers is operating its chip mill in a location specifically negotiated and rezoned for the operation of a chip mill.").  This situation is materially the same.  The GRP Defendants were encouraged to locate the Plant in Franklin County by the county board and state legislators from the area.   Davis Dep. at

---

[6] "A nuisance at law or a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings." *Asphalt Prods. Co.*, 16 S.E.2d at 772.  As the Plant is not "at all times and under any circumstances" a nuisance, it is not a nuisance per se.  *Cf. id.* (holding "[t]he operation of an asphalt-manufacturing and cement-mixing plant is not a nuisance per se").

22:14-21.  The Plant is located in sparsely populated, rural Franklin County, in a portion of the county zoned specifically for "heavy industrial" use and at a site that had been zoned for a biomass power-generation facility for seven years.  *See* Expert Report of Ian Brewe, at 5-1; *see also* 2015 Franklin County Board of Commissioners Meeting Minutes at GRP 000096-97. Most of the area surrounding the plant is zoned for agricultural or commercial use. *See* Franklin County, Georgia, Official Zoning Map, *supra*. Only two smaller lots are zoned "rural residential." *Id*. There are poultry farms, a landfill, a cabinet-making operation, and Interstate 85 in the immediate vicinity. *See* Expert Report of Ian Brewe, at 5-1. This is not an asphalt plant in a residential area or a poultry farm "in the midst of the places of business and homes occupied by the petitioners." *See Poultryland, Inc.*, 37 S.E.2d at 791; *Asphalt Products Co.*, 16 S.E.2d at 772.  This is a power plant in a rural, heavy industrial, agricultural zone, which is appropriate as a matter of law.  *See generally Poultryland, Inc.*, 37 S.E.2d at 790 ("[T]here must be some proper place where every lawful business may be carried on, without danger of interference on the part of those who, in some slight degree, may be annoyed or endangered by the nearness of the objectionable occupation."). Because the Plant is a lawful operation conducted in a lawful manner in an area where such conduct is to be expected, it cannot be a nuisance under Georgia law. The GRP Defendants are entitled to summary judgment on Count I of all Plaintiffs' complaints.

> **B.**    **The Plant Cannot be a Nuisance after June 2021 under O.C.G.A. § 41-1-7.**

Alternatively, the GRP Defendants are entitled to partial summary judgment on Plaintiffs' nuisance claims to the extent they allege the Plant was (and is) a nuisance beyond June 2021. Because the Plant is an "agricultural support facility," operating within the law, it cannot be considered a nuisance beyond its second year of operation.

O.C.G.A. § 41-1-7(d), the "right to farm" statute provides: "No agricultural facility, agricultural support facility, or any operation at an agricultural support facility shall be or shall

become a nuisance, either public or private if the facility or operation has been in operation for two years or more."  The only exception to this rule is if "a nuisance results from the negligent, improper, or illegal operation of any such facility or operation."  *Id.*  Here, there is no dispute the exception for negligent, improper, or illegal operation does not apply.  As discussed below related to Plaintiffs' negligence claims, the Plant has been "operated pursuant to industry standards" and in compliance with all regulatory rules and its permit.  *See Georgia-Pac. Consumer Prod., LP v. Ratner*, 812 S.E.2d 120, 127 (Ga. 2018). "Given that Plaintiffs have shown no rule, regulation, or standard that [the GRP Defendants have] violated," the Plant cannot be said to be operating in a negligent, improper, or illegal manner.  *See id.*

Because the exception does not apply, the only issue to resolve is whether the Plant is an "agricultural support facility."  The statute defines "[a]gricultural support facility" as "any food processing plant or forest products processing plant together with all related or ancillary activities, including trucking."  O.C.G.A. § 41-1-7(b)(3).  A "[f]orest products processing plant" is, relevant here, "a commercial operation that manufactures, packages, labels, distributes, or stores any forest product."  O.C.G.A. § 41-1-7(b)(6). Here, the electricity the Plant generates from burning wood chips is a "forest product" within the statute's meaning. *Id*. The statute does not define "forest product," but the Georgia Court of Appeals analyzed the term in *Ratner*. 812 S.E.2d 120, 124. There, the court held the term "is not a word of art which is universally and consistently defined by the industry" and is "ambiguous."  *Id*.  Consequently, the court had to "glean the intent of the legislature by keeping in mind the purpose of the…statute and the old law, the evil, and the remedy."  *Id.*

The purpose of the statute is "'to conserve, protect, and encourage the development and improvement of [the State's] agricultural and forest land and facilities for the production or distribution of food and other agricultural products, including without limitation forest products'

by 'limiting the circumstances under which agricultural facilities and operations or agricultural support facilities may be deemed a nuisance." *Id.* (quoting O.C.G.A. § 41-1-7(a)). Keeping that purpose in mind, the Court of Appeals concluded a paper-recycling plant was an "agricultural facility" because its operations "conserve[d] forest land and enable[d] continued development of additional markets for distributing products made from wood fibers." *Id.* at 440.

The same considerations of purpose compel the conclusion the Plant is an "agricultural support facility." *Id*. The power the Plant generates comes from the burning of wood chips. Similar to the paper-recycling plant, the Plant has "both economic and conservation benefits that advance the state purpose" of the statute. *Id*. The Plant promotes the continued development of Georgia's forest industry by creating demand for wood chips. *See* Groves Dep. 20:20-22:6. Indeed, Franklin County was chosen as the location for the Plant in part because of the readily available "woody biomass." *Id*. The Plant generates power through a renewable resource and uses by-products from other timber applications. Tanis Dep. at 21:8-22:2. Therefore, the power the Plant generates and distributes is as much a "forest product" within the broad meaning of O.C.G.A. § 41-1-7(d) as the recycled paper at issue in *Ratner*. 812 S.E.2d at 124. Therefore, the Plant is an "agricultural facility" that cannot be considered a nuisance after its second year of operation. *Id*. Because the Plant began operation in June 2019, it cannot be considered a nuisance beyond June 2021. *See* O.C.G.A. § 41-1-7(d).

### C. There Is No Evidence Showing the Plant is a Nuisance After April 2022.

As a final alternative on Plaintiffs' nuisance claims, the GRP Defendants request at least partial summary judgment on those claims to the extent they allege a nuisance existing beyond April 2022 because there is no evidence to support a finding of nuisance beyond that date.

A nuisance is "anything that causes hurt, inconvenience, or damage to another." O.C.G.A. § 41-1-1. Such hurt, inconvenience, or damage cannot be intermittent, one-off events. *Gunnells*,

256 S.E.2d at 784 (noting an act "must be of some duration" to constitute a nuisance).  Even viewed in the light most favorable to Plaintiffs, there is no evidence the Plant has caused consistent "hurt, inconvenience, or damage" to Plaintiffs after April 2022.  Report of Ian Brewe, at 6-3; Vanessa Jinks Dep. at 21:12-23 (indicating the last time she heard a loud roar from the Plant was summer 2021); Baker Dep. at 52:13-25 (describing the noise as moderate since October 1, 2021); Nelson Dep. at 176:22-25.  On the contrary, the evidence shows significant, voluntary, and effective measures to reduce sounds and other emissions from the Plant were largely completed in April 2022.  These measures have not completely eliminated sounds coming from the Plant because nothing can, but they have reduced them significantly. *See id*. While Plaintiffs may be able to point to incidents of noise coming from the Plant after April 2022, those intermittent occurrences are not occurring with such regularity and are not of such duration to constitute a nuisance.  There is no evidence suggesting any "nuisance" continued beyond the installation of the mitigation measures. The GRP Defendants are entitled to at least partial summary judgment on Plaintiffs' nuisance claims to the extent they allege a nuisance existing after April 2022.

## III.   Plaintiffs' Negligence Claims Fail as a Matter of Law.

Plaintiffs' second substantive claim is that the GRP Defendants designed, constructed, operated, and are operating the Plant in a negligent manner.  However, the undisputed material facts establish Plaintiffs cannot show the GRP Defendants have breached any duty, much less one resulting in harm to Plaintiffs; therefore, the GRP Defendants are entitled to summary judgment.

A negligence claim must be based on a breach of a duty.  *Ratner*, 812 S.E.2d at 124.  The watchword concerning duty is reasonableness, that is, whether the defendant acted *reasonably*. *See id.* at 442.  Here, Plaintiffs' allegations relate to the design, construction, and operation of a biomass power generation facility.  *See, e.g.*, [Doc. 1-1 at ¶¶ 29, 31, 38]. Therefore, Plaintiffs are asking that a jury determine what it means to "reasonably" design, construct, and operate a biomass

17

power-generation facility, and then determine whether the GRP Defendants met that standard. However, Plaintiffs have no evidence from which the jury can make those determinations. Because what is "reasonable" in the design, construction, and operation of a biomass power-generation facility is "beyond the ken of the average juror," it was incumbent on Plaintiffs to present expert testimony on that issue. *See Georgia Dept of Transp. v. Baldwin*, 665 S.E.2d 898, 903 (2008) (holding Department of Transportation inspection methods were "beyond the ken of the average juror"); *see also Bartenfeld v. Chick-fil-A, Inc.*, 815 S.E.2d 273, 278 (Ga. Ct. App. 2018) (holding a plaintiff could not prevail on her claim that Chick-fil-A had negligently designed its parking lot without expert evidence). Yet, Plaintiffs have no expert testimony concerning what it means to design, construct, or operate a biomass power-generation facility "reasonably." Without evidence to meet this necessary element, Plaintiffs' negligence claims must fail. *See Celotex Corp.*, 477 U.S. at 322-23.

Plaintiffs do attempt to present the testimony of David Nelson, an acoustical engineer, concerning what should have been done in the design and construction of the facility, but his own testimony shows, as discussed in the GRP Defendants' contemporaneously filed motion to exclude his testimony, that his opinion in that regard is based entirely on his own beliefs and conceptions of "common sense," not any definitive standard. [Doc. 42-1 at p. 5]. In fact, Nelson admits he is not an expert in the design, construction, and operation of a biomass facility. Nelson Dep. at 37:14-22. Without expert testimony, Plaintiffs have no evidence of what "reasonable" means in this case, and nothing against which to measure the GRP Defendants' conduct.

The lack of expert testimony is particularly determinative of Plaintiffs' negligence claims because Plaintiffs can point to no permit, regulation, or other mandatory standard which the GRP Defendants have violated in a way that has caused Plaintiffs' damages. *See Ratner*, 812 S.E.2d at 124; *see also Bartenfeld*, 815 S.E.2d at 278 (holding the ASTM standards are voluntary and

therefore do not provide evidence of the standard of care).  While there have been minor, isolated incidents in which the Plant may have been in violation of a regulation, there is nothing to suggest those incidents were the result of negligence, and there is certainly no evidence connecting those particular, one-off incidents to any harm Plaintiffs allegedly suffered.

Finally, the allegation the GRP Defendants have been negligent is belied by the fact they have undertaken "numerous efforts to attempt to minimize the risk of harm to Plaintiffs" from the operation of the Plant.  *See Ratner*, 812 S.E.2d at 124. Under no circumstance can the GRP Defendants' be held to have acted unreasonably to Plaintiffs' harm.  Plaintiffs' negligence claims must fail.

## IV.  <u>Summary Judgment is Proper on Plaintiffs' Punitive Damage Claims.</u>

The third count of the twenty-four complaints is a claim for punitive damages.  Because summary judgment is appropriate on Plaintiffs' substantive claims for nuisance and negligence, summary judgment is appropriate on their derivative claims for punitive damages.  *See D.G. Jenkins Homes, Inc. v. Wood*, 582 S.E.2d 478, 481 (Ga. Ct. App. 2003). These claims fail on their own as well.  "Punitive damages may be awarded in a case of nuisance when clear and convincing evidence shows that the defendant's actions demonstrate 'willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.'"  *Oglethorpe Power Corp. v. Estate of Forrister*, 774 S.E.2d 755, 763 (Ga. Ct. App. 2015). However, they are generally "improper where a defendant has adhered to environmental and safety regulations."  *Stone Man, Inc. v. Green*, 435 S.E.2d 205, 206 (Ga. Ct. App. 1993). This is because evidence of compliance "tend[s] to show that there is no clear and convincing evidence" of the egregious conduct that would support an award of punitive damages, particularly "in the case of a commercial enterprise the operation of which is accompanied by a certain amount of unpleasant but unavoidable effects or byproducts."  *Id.*

Plaintiff has no evidence the GRP Defendants engaged in any conduct approaching "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  Apart from isolated incidents discussed above, the Plant has at all times operated in accord with all regulatory requirements. There is no other "culpable" conduct to which Plaintiffs can point to overcome the presumption of reasonableness flowing from the Plant's compliance with legal requirements.  *See Gen. Motors Corp. v. Moseley*, 447 S.E.2d 302, 311 (Ga. Ct. App. 1994) ("[N]othing in *Stone Man* precludes an award of punitive damages where, notwithstanding the compliance with applicable safety regulations, there is other evidence showing culpable behavior."), *overruled on other grounds by Williams v. Harvey*, 858 S.E.2d 479 (Ga. 2021).  This case is not like *Moseley*, where, despite full regulatory compliance, there was evidence of "knowing endangerment to the public" from five million trucks on the road.  447 S.E.2d 302, 311.  Nor is it like *Oglethorpe Power*, where the court concluded there was evidence suggesting the defendants chose not to implement a well-known, less-disruptive alternative for economic reasons.  774 S.E.2d at 763.  Instead, this case involves a relatively novel concept—a biomass power-generation facility. Furthermore, the GRP Defendants' significant mitigation measures, undertaken voluntarily, belie any suggestion of willful misconduct or any other wrongful state of mind that could justify punitive damages. Therefore, punitive damages are inappropriate, and the GRP Defendants are entitled to summary judgment on Count III of Plaintiffs' complaints.

## V.   **Plaintiffs' Claims for Attorneys' Fees also Fail.**

The final count of each Plaintiffs' complaint is a claim for attorneys' fees under O.C.G.A. § 13-6-11.  Like punitive damages, the GRP Defendants are entitled to summary judgment on these claims because Plaintiffs' substantive claims fail, *see ABH Corp. v. Montgomery*, 849 S.E.2d 30, 33 (Ga. Ct. App. 2020), and because Plaintiffs' cannot prove these claims in any event. O.C.G.A.

§ 13-6-11 allows a plaintiff to recover attorneys' fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense."  There is no evidence to support an award under any of these theories.

Concerning bad faith, there is no allegation of any intentional tort, *Gen. Refractories Co. v. Rogers*, 239 S.E.2d 795, 800 (Ga. 1977) ("Having held the plaintiff did not prove an intentional tort the element of bad faith is eliminated from further consideration in passing on attorney's fees."), and (as explained above) Plaintiffs cannot show any conduct so egregious as to support a finding of bad faith, *see Oglethorpe Power Corp.*, 774 S.E.2d at 763 (noting a punitive damages award would suffice to show bad faith under O.C.G.A. § 13-6-11). Here, Plaintiff has not presented any evidence suggesting the GRP Defendants have been stubbornly litigious or put Plaintiffs to unnecessary trouble and expense. Even if the GRP Defendants do not ultimately prevail on their defenses, the evidence certainly creates enough of a dispute to constitute a bona fide controversy that absolutely precludes an award of attorneys' fees on those grounds.  *See Nash v. Reed*, 825 S.E.2d 853, 856 (Ga. Ct. App. 2019). The GRP Defendants are entitled to summary judgment on Plaintiffs' claims for attorneys' fees.

## VI.   The GRP Defendants Are Entitled to Summary Judgment on All Claims Because Plaintiffs Failed to Disclose Any Amount or Computation of Damages.

The GRP Defendants are entitled to summary judgment because Plaintiffs failed to provide a computation of each category of claimed damages required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii), and prior to the close of discovery, they failed to provide the amount of damages, which the GRP Defendants specifically requested. This Court should grant summary judgment in favor of the GRP Defendants and exclude presentation of evidence of damages related to the categories of damages for which Plaintiff failed to provide an amount and the required computation. *See generally* Fed. R. Civ. P. 37(c)(1); *Vital Pharmaceuticals, Inc. v. Monster Energy*

*Co.*, 2022 WL 3083273, at *3 (11th Cir. Aug. 3, 2022) (affirming exclusion of loss of goodwill and lost sales damages because the required computation was never presented); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (noting the plaintiff's failure was "especially troubling" because the opposing party had propounded an interrogatory which specifically requested a calculation of damages).  Plaintiffs' failure to provide this basic damage information is neither substantially justified nor harmless. *See Mee Industries v. Dow Chemical Co.*, 608 F.3d 1202, 1222 (11th Cir. 2010) (affirming summary judgment excluding loss of goodwill damages for failure to provide computation of damages in initial disclosures and interrogatory responses).

Plaintiffs' served their Rule 26(a)(1) Initial Disclosures on August 9, 2021, seeking "damages for the diminution of the value of their real property, . . . compensation for interference with their right of quiet enjoyment and use of their property and for discomfort and annoyance. . . their attorney's fees and litigation expenses, and punitive damages[.]" Plaintiffs' Initial Disclosures, at 6. In regard to Plaintiff Sheila Baker, Plaintiffs also disclosed she is seeking damages for a loss of farming income. *Id.* Plaintiffs do not provide a computation for any of their alleged damages. *Id.* The only description provided by Plaintiffs is: "These amounts are to be determined by the enlightened conscious of an impartial jury." *Id.* Plaintiffs never supplemented their Initial Disclosures in accordance with Federal Rule of Civil Procedure 26(e)(1). [7]

Defendant Georgia Renewable Power, LLC served its First Interrogatories to Plaintiffs on February 3, 2021, requesting Plaintiffs identify whether they are seeking certain damages, and if so, **to quantify the amount** Plaintiffs seek for each potential category.  *See, e.g.*, Plaintiffs Arlen

---

[7] Plaintiffs also claim damages for diminution of value of their property. While their Initial Disclosures failed to provide a computation for these alleged damages, in discovery Plaintiffs presented expert testimony as to the diminution of the value of their real property. The GRP Defendants address these claimed damages separately below in Argument Section VII.

Hart and Angie Hart's Responses to Defendant Georgia Renewable Power, LLC's First Interrogatories to Plaintiffs, at No. 15.[8] Plaintiffs did not provide an amount of damages or a computation in response to Interrogatory Number 15, either initially or in any of their supplement responses. *See id.*; Plaintiff Sheila Baker's Supplemental Responses to Defendant Georgia Renewable Power, LLC's First Interrogatories to Plaintiffs, at No. 15.

Rule 26(a)(1)(A)(iii) requires Plaintiffs to disclose "a computation of each category of damages claimed," as well as make available for inspection and copying documents or other evidentiary material "on which each computation is based." Plaintiffs must provide this disclosure voluntarily, "without awaiting a discovery request." Fed. R. Civ. P. 26(a)(1)(A). Plaintiffs are under a continuing duty to supplement their initial disclosures and discovery responses if they learn "that in some material respect the disclosure or response is incomplete or incorrect, and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A); *see also* Rule 16 and 26 Order entered by this Court on July 24, 2021 [Doc. 10].

A party who fails to provide information required by Rule 26(a) or (e) cannot use that information in a motion, at a hearing, or at a trial unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); *Vital Pharmaceuticals, Inc.*, 2022 WL 3083273, at *3; *Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*, 993 F.3d 1299, 1308 (11th Cir. 2021) (affirming exclusion of lost profits damages for failure to disclose computation in initial

---

[8] All Plaintiffs' responses and supplemental responses to Defendant Georgia Renewable Power, LLC's First Interrogatories to Plaintiffs have been filed with the Certificate of Need to File Discovery contemporaneously. The responses are substantively the same and, where the Plaintiff asserts specific types of damages, state: "The amount of such damages is to be determined by the enlightened conscience of an impartial jury." *See e.g.*, Plaintiffs Arlen Hart and Angie Hart's Responses to Defendant Georgia Renewable Power, LLC's First Interrogatories to Plaintiffs, at No. 15.

disclosures). In addition to these penalties, summary judgment is proper in instances where the party fails to comply with the mandatory disclosure requirements of Rule 26. *Mee Industries*, 608 F.3d at 1222; *City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 906 (11th Cir. 2013) (affirming grant of summary judgment excluding damages for failure to provide sufficient computation); *Design Strategy, Inc.,* 469 F.3d at 295 (affirming entry of judgment excluding evidence of lost profits for failure to disclose sufficient detail of damages).

Plaintiffs' description of their alleged damages does not contain the requested amount and is not a computation; therefore, it does not satisfy Rule 26(a)(1)(A)(iii) or their duty to fully respond to the GRP Defendants' discovery requests. *Design Strategy, Inc.,* 469 F.3d at 295; *City of Rome*, 549 F. App'x at 905 (holding Rule 26 requires a computation of each category of damages); *Circuitronix, LLC*, 993 F.3d at 1307 (finding providing sales revenue numbers and expecting non-disclosing party to perform calculation of lost profits does not satisfy Rule 26); *City & County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221–22 (N.D. Cal. 2003) (stating plaintiff should provide more than an amount, "including amounts claimed for 'general' damages (pain, suffering, or disfigurement)" and the required computation with some analysis); *Whitesell Corp. v. Electrolux Home Products, Inc.*, 2022 WL 1158252, at *4 (S.D. Ga. Apr. 19, 2022) (citing *Design Strategy, Inc.*, 469 F.3d at 293)(providing capital expenditure documents without explanation does not satisfy Rule 26); *Rease v. MHM Correctional Serv., Inc.,* 2012 EL 12864364 at *5 (N.D. Ga. 2012)(stating a party must provide a computation of damages for compensatory damages for pain and suffering, punitive damages, and attorneys' fees); *Marlin v. BNSF Ry. Co.,* 2015 WL 11120716, at * 1(explaining defendant "is entitled to know the items and amounts of damages plaintiff will claim at trial," including with respect to non-economic damage items, such as pain and suffering, where defendant specifically asked for an amount for each item

of damages claimed); *see, e.g.*, Plaintiffs Arlen Hart and Angie Hart's Responses to Defendant Georgia Renewable Power, LLC's First Interrogatories to Plaintiffs, at No. 15.

The rule does not permit Plaintiffs to vaguely describe their damages and "unload their obligation to provide initial disclosures onto the party the rule is designed to protect." *City of Rome*, 549 F. App'x at 905. Rule 26 requires Plaintiffs to specify their damages in sufficient detail to enable the Defendants to understand their exposure and make informed decisions on settlement and discovery. *See City & County of San Francisco*, 218 F.R.D. at 221–22. Plaintiffs provide no such detail, violating the overall goal of the initial disclosure requirement, which is "…to get out basic information about the case at an early point." *Stamps v. Encore Receivable Mgmt., Inc.*, 232 F.R.D. 419, 422 (N.D. Ga. 2005). Plaintiffs' lack of detail falls short of the requirement to disclose their damages in order "to make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest extent possible.'" *Whitesell Corp.*, 2022 WL 1158252 at *1 (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). In order to meet this requirement, Plaintiffs must provide an actual amount of damages and a computation for each category of claimed damages along with documents which support the computation. *Id.*; *Vital Pharm., Inc.*, No. 21-13264, 2022 WL 3083273, at *3. The blanket statement—"[t]hese amounts are to be determined by the enlightened conscious of an impartial jury"--does not comply with these discovery requirements. *See e.g.*, Plaintiffs Arlen Hart and Angie Hart's Responses to Defendant Georgia Renewable Power, LLC's First Interrogatories to Plaintiffs at No. 15; *Sauer v. Exelon Generation Co., LLC*, 2011 WL 3584780, at *9–10 (N.D. Ill. Aug. 15, 2011) (explaining a computation of damages must be provided in a private nuisance case seeking damages for personal injury); *Barbadjide v. Betts,* 2018 WL 963404, at *1-2 (M.D. Fl. 2018) (explaining to fulfill the purpose of discovery a computation of damages is required for "both economic and non-economic damages, such as pain and suffering, loss of enjoyment of life, and embarrassment.");

*LeBlanc v. Unifund CCR Partners, G.P.,* 2007 WL 2446900, at *1 (M.D. Fl. 2007)(finding defendant is entitled to an amount for damages sought of pain, worry and fear).

Plaintiffs must do more than simply list an amount or identify documents without any explanation. *Design Strategy, Inc.,* 469 F.3d at 295. Yet, Plaintiffs do not even list an amount or identify documents, much less describe a computation. If Plaintiffs' Initial Disclosures and/or discovery responses were incomplete, they had a duty to supplement and provide a computation of damages prior to the close of discovery on August 15, 2022. *Circuitronix*, 993 F.3d at 1307 (citing Fed. R. Civ. P. 26(e)(1)(A)). Plaintiffs never supplemented to provide the amount of damages sought or this required computation, and they should not be permitted to do so now after the close of discovery and nearly two years after the case was filed.

If the Plaintiffs plan to testify on how and to what degree the GRP Plant interfered with their right of quiet enjoyment and use of their property, caused discomfort and annoyance, farming losses, and warrants punitive damages, then surely they can and must place a value on these damages. *Dixon v. Bankhead*, 2000 WL 33175440, at *1 (N.D. Fla. Dec. 20, 2000)("If Plaintiff is to be permitted to testify to his intangible emotional harm, as he should be, he surely can place a dollar value on that from his own perspective."). The GRP Defendants are entitled to summary judgment on any damages amount and computation not provided. *Mee Industries,* 608 F.3d at 1221(excluding loss of goodwill damages in part based on lack of calculation in initial disclosures and interrogatory responses); *City of Rome*, 549 F. App'x at 905(excluding damages evidence where Plaintiffs had ample opportunity to provide a damages amount and calculation but failed to provide it); *Zahn v. Solano,* 2014 WL 12749233, at *2 (N.D. Tx. 2014)(excluding evidence of pain and suffering damages where discovery was closed and no calculation was provided).

**VII.**     **Individually, Plaintiffs Lack Evidence to Support Some of Their Claims.**

As quoted above, "[a] nuisance is anything that causes hurt, inconvenience, or damage to another." O.C.G.A. § 41-1-1. This is a "nebulous concept." *See In re Flyboy Aviation Props., LLC*, 525 B.R. 510, 527 (Bankr. N.D. Ga. 2015); *see also Gunnells*, 256 S.E.2d at 784 ("It has been said that pornography cannot be defined but you know it when you see it. A nuisance is in a similar category."). Nevertheless, certain guideposts exist, namely "[t]he alleged 'inconvenience…shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary reasonable man,'" *Warren Co. v. Dickson*, 195 S.E. 568, 570 (Ga. 1938), and the harm must be real, not just potential. *J.N. Legacy Grp., Inc. v. City of Dallas*, 745 S.E.2d 721, 729 (Ga. Ct. App. 2013). Similarly, to support their negligence claims, all Plaintiffs must show they have suffered an injury as a result of the GRP Defendants allegedly negligent conduct. *See Ratner*, 812 S.E.2d at 124. Here, all twenty-four cases suffer from at least one fundamental evidentiary gap on one or both of their substantive claims.

    *A.*     **With the exclusion of Biggers's opinions, all Plaintiffs have failed to show diminution in their real property values.**

For example, in all the cases, Plaintiffs have failed to present any admissible evidence the Plant has caused a diminution in their property values. Plaintiffs' appraisal expert's testimony of Biggers should be excluded for the reasons stated in the GRP Defendants' contemporaneously filed motion to exclude. [Doc. 44-1]. Without reliable evidence on diminution of property value, the Court should grant summary judgment as to all of Plaintiffs' claims for property damage.

    *B.*     **All Plaintiffs' claims for damages caused by potentially feelable vibrations fail.**

Additionally, the testimony of Plaintiffs' sound expert, David Nelson, upon which Plaintiffs rely to prove their allegations of vibrations occurring at their properties, is also due to be excluded for the reasons stated in the GRP Defendants' contemporaneously filed motion to exclude

his testimony. [*See* Doc. 42-1]. Without his testimony, many Plaintiffs have no evidence of vibrations occurring at their properties.  Moreover, Nelson himself testified that it was unlikely that properties more than 0.5 miles from the Plant would experience vibrations.  Nelson Dep. at 178:1-14. He also explained a potentially perceptible vibration can only be felt by experiencing the vibration of a structure, and, if there are no buildings on a property, there is nothing to vibrate. *Id*. at 54:22-24. Therefore, those Plaintiffs whose properties do not contain a structure, or are outside a half-mile radius from the Plant, cannot claim they are harmed by vibrations.[9]

In addition to these universal problems with Plaintiffs' claims, each Plaintiffs' claims fail for the individualized reasons below.

### C.     3:21-cv-42-Millen

Plaintiff Agnes Millen died while this case has been pending, and Lisa Harper and Robyn Lynn Mahan were appointed as co-executors of her estate, and they are proceeding with the lawsuit on the estate's behalf.   Harper Dep. at 6:21-7:6.[10] In her complaint, Millen alleged her right to quiet enjoyment of her property—a vacant tract of land—was harmed by noise, vibrations, odor, and smoke coming from the Plant. [Doc. 1-1] at 7, 12; *see also* Harper Dep. at 12:9-10. But, Millen has no evidence the alleged emissions from the Plant caused her any damage because she did not experience them. Before she died, Millen had not visited her property in Franklin County in ten to fifteen years. *See* Plaintiff Agnes Millen's Responses to Defendant Georgia Renewable Power, LLC's First Interrogatories to Plaintiff at No. 11. Because her last visit to the property was years

---

[9] As shown below, the following fourteen Plaintiffs' properties are either outside of a half a mile from the Plant or contain no structures: Baker (3:21-cv-48); Millen (3:21-cv-42); Dickens (3:21-cv-64) ; Harris (3:21-cv-63); Smith (3:21-cv-54); Mike Blalock (3:21-cv-51); Mark and Mayra Blalock (3:21-cv-50); O'Connor (3:21-cv-58); Ayers (3:21-cv-49); Pearcy/Robinson (3:21-cv-57);  Schiffers (3:21-cv-56); Hart (3:21-cv-62); Elrod (3:21-cv-47); Jinks (3:21-cv-61).

[10] For ease of reference, the GRP Defendants will refer to the plaintiff in Case No. 3:21-cv-42 as "Millen."

before the Plant was constructed, she never personally experienced any alleged noise, vibrations, odor, or smoke at her property in Franklin County. Harper Dep. 24:12-25:2. Further, Plaintiffs' sound expert, Mr. Nelson, did not take a single sound measurement at, or conduct any sound modeling in regard to Millen's property.  Nelson Dep. at 76:19-22; Exhibit 147 of Deposition of David Nelson ("Expert Report of David Nelson") at 14.  There is no record evidence concerning the Plant's impact on the property.

Concerning vibrations, Mr. Nelson also explained there can only be potential, feelable vibrations from the Plant on properties with structures because vibrations can only be felt through structures.  Nelson Dep. 54:22-24.  Millen's property does not contain any structures. Harper Dep. at 12:9-10.  Millen's vacant tract thus cannot experience vibrations. Moreover, Mr. Nelson's testimony concerning vibrations is due to be excluded for the reasons given in the GRP Defendant's motion to exclude his testimony.

Finally, Harper and Mahan are not familiar with property values in Franklin County and do not have knowledge of the value of Millen's property.  Harper Dep. 22:25-23:5; 24:3-11; Mahan Dep. 9:19-10:18.   These evidentiary gaps mean the GRP Defendants are entitled to summary judgment on all Millen's claims.

### D.      3:21-cv-43-Nesmith

Plaintiff James Nesmith alleges energy production activities at the Plant have caused excessive and unabated noise, vibrations, light, odor, and smoke. [Doc. 1-1 at 12]. The GRP Defendants are entitled to partial summary judgment on Nesmith's claims to the extent they allege he has suffered harm because of smoke, he has suffered personal injuries, and his property has diminished in value.

First, Nesmith's allegations in his complaint are contrary to his own experience. Nesmith testified he is not alleging there is smoke from the Plant damaging his property in any way, and he is not alleging any personal injuries from the Plant.  Nesmith Dep. 62:13-24.

Second, Nesmith testified has not appealed his 2021 tax assessed value, has not tried to sell his property, and has "no idea what [the property] is worth."  Nesmith Dep. 30:21-32:11.

### E.      3:21-cv-44-Sweatman

Plaintiff James Morris Sweatman and Janice Nix Sweatman (collectively, the "Sweatmans") allege energy production activities at the Plant have caused excessive and unabated noise, vibrations, light, odor, and smoke. [Doc. 1-1 at 12]. The GRP Defendants are entitled to summary judgment on the Sweatmans' claims to the extent they allege they have suffered harm as a result of vibrations and light and that their property has diminished in value.

First, the Sweatmans' allegations in their complaint are contrary to their own experience. The Sweatmans do not feel any vibrations, and the light from the Plant does not bother them. James Sweatman Dep. 62:4-22; Janice Sweatman Dep. 18:21-19:1.

Second, the Sweatmans' only evidence of the value of their property is an anecdote about how they were approached by a real estate agent who knew of someone interested in purchasing the property even after Mr. Sweatman told her the asking price would be over $2 million.  James Sweatman Dep. 23:1-23. The Sweatmans refused the offer because their property is not for sale. *Id*.

### F.      3:21-cv-45-Wilson

The GRP Defendants are entitled to summary judgment on the claims of Plaintiffs Gerry Wilson and Roger Wilson (collectively, the "Wilsons") to the extent they claim a diminution in property value because the Wilsons do not have knowledge of the value of their property either before or after the Plant was built.  Gerry Wilson Dep. 48:12-14; Roger Wilson Dep. 106:2-7.

*G.*     **3:21-cv-46–Alexander (Powers)**

The GRP Defendants are entitled to summary judgment on the claims of Plaintiffs Terrie Jo Alexander and Jeffrey G. Powers to the extent they claim a diminution in property value. Ms. Alexander does not have an opinion regarding the value of the property, and Mr. Powers testified he has no idea of the value.  Alexander Dep. 30:21-23; Powers Dep. 60:24-61:3.

*H.*     **3:21-cv-47-Elrod**

Plaintiffs Samuel David Elrod and Kathy Brown Elrod (collectively, the "Elrods") allege energy production activities at the Plant have caused excessive and unabated noise, vibrations, light, odor, and smoke. [Doc. 1-1 at 12]. The Elrod properties at issue are 1770 Burke Road, Carnesville, Franklin County, Georgia 30521; 320 Burke Road, Carnesville, Franklin County, Georgia 30521; 1034 Burke Road, Carnesville, Franklin County, Georgia 30521; 2201 New Bethel Road, Carnesville, Franklin County, Georgia 30521; 2237 Burke Road, Carnesville, Franklin County, Georgia 30521. *Id*. at 7-8. The GRP Defendants are entitled to summary judgment on the Elrod's claims to the extent they allege they are suffering harm from vibrations from the Plant and that their property has diminished in value.

First, the main dwelling on the Elrods' property (1770 Burke Road) is 1.1 miles from the Plant, and thus beyond even Plaintiffs' expert's range for feelable vibrations. Exhibit 207 of Deposition of Michael Biggers ("Biggers Dep."), at 4, 17. The Elrods have presented no other evidence of feelable vibrations caused by the Plant on those portions of their properties.

Second, the Elrods have not presented any evidence of diminution in value. Plaintiffs' appraisal expert's opinions are due to be excluded, and the Elrods have not had an appraisal done outside of the lawsuit and do not know what the properties are worth on the market.  Samuel Elrod Dep. 57:23-58:12; 62:24-63:7; Kathy Elrod Dep. 22:3-14.

*I.*        **3:21-cv-48–Baker**

Plaintiff Sheila Baker ("Baker") alleges energy production activities at the Plant have caused excessive and unabated noise, vibrations, light, odor, smoke, and water pollution. [Doc. 1-1 at 12-13]. The properties are a vacant tract of land at 2101 Burke Road, Carnesville, Franklin County, Georgia 30521; and a property with a residence at 991 Culpepper Drive, Carnesville, Franklin County, Georgia 30521. *Id*. at 7. Baker died during the course of this lawsuit, and Jessica Harman was appointed the representative of the estate. Harman Dep. 7:21-8:7. [11] The GRP Defendants are entitled to summary judgment on Baker's claims to the extent she alleges her property has diminished in value, that she suffered harm from vibrations at her properties, and that she suffered any lost farming income.

First, Baker has not presented any evidence of diminution in value. The only indication of Baker's property's value comes from Ms. Harman, who indicated the estate planned to sell the property at 991 Culpepper Drive and a real estate agent suggested listing it for $249,900.00, which is almost $60,000.00 more than Plaintiffs' expert gave as the value of the property if the Plant was not there. Harman Dep.12:25-13:6; Exhibit 208 of Biggers Dep., at 2. In regard to the 2101 Burke Road property, Plaintiffs' expert did not appraise that property, and there is no other evidence regarding its value. Exhibit 208 of Biggers Dep. As such, there is no evidence of diminution of value for 2101 Burke Road.

Second, Baker has no evidence of vibrations. Baker's property is 0.8 miles from the plant. Exhibit 208 of Biggers Dep., at 4.

---

[11] As with Millen, the GRP Defendants will continue to refer to the plaintiff in Case No. 3:21-cv-48 as "Baker."

Third, Baker alleges damages for lost farming income, yet she has provided no evidence of any farming losses and cannot say how much money she made farming her property in any given year. Baker Dep. 17:1-8.

### J.      3:21-cv-49-Ayers

The GRP Defendants are entitled to summary judgment on Plaintiff Brandon Michael Ayers's claims to the extent he alleges his property has diminished in value and that he is suffering harm from vibrations at his property.

First, Ayers is not familiar with sales in the area, has not consulted a real estate agent, and has not done any research of property values.  Ayers Dep. 67:12-20.

Second, Ayers's property is roughly a mile from the plant. Ayers Dep., 59:4-50; Nelson Dep. 178:1-14.

### K.      3:21-cv-50–Mark and Mayra Blalock

The GRP Defendants are entitled to summary judgment on Plaintiffs Mark and Mayra Blalock's (collectively, the "Blalocks") claims to the extent they allege their property has diminished in value and that they are suffering harm from vibrations at their property.

First, the Blalocks have no opinion regarding the value of their property and would not sell for any amount of money.  Mark Blalock Dep. 65:20-66:8.

Second, the Blalocks's property is 1.1 miles from the Plant which is outside Nelson's vibration area. Exhibit 209 of Biggers Dep., at 4.

### L.      3:21-cv-51-Michael Blalock

The properties at issue in Plaintiff Michael Blalock's case are located at 2231 and 2233 Highway 198, Franklin County, Carnesville, Georgia, 30521. *Id*. at 7. The GRP Defendants are entitled to summary judgment on Michael Blalock's claims to the extent he alleges his property has diminished in value and he is suffering harm from vibrations at his property.

First, Michael Blalock has no knowledge of the value of his property.  Michael Blalock Dep. 33:12-14. Additionally, even if Plaintiffs' expert's opinions were allowed, he did not appraise the 2233 Highway 198 property, because he only appraised 10 acres of the 29 total acres belonging to Michael Blalock.  Michael Blalock Dep. at 9:15-18; Exhibit 211 of Biggers Dep. at 1. As such, there is no evidence of any diminution value to this parcel.

Second, Michael Blalock's property is 1.1 miles from the Plant. Exhibit 211 of Biggers Dep. at 4. Michael Blalock has presented no other evidence of feelable vibrations caused by the Plant.

**M.      3:21-cv-52–Abbs/Bellamy**

Plaintiffs Linda Abbs, the Linda R. Abbs Revocable Living Trust, Mark Bellamy, and Beth Bellamy allege energy production activities at the Plant have caused excessive and unabated noise, vibrations, light, and odor which "have interfered and will continue to interfere with Plaintiff's right of quiet enjoyment of their property." [Doc. 22 in 3:21-cv-42 at 3]. The continuous nuisance claim is only in regard to the Bellamys because Linda Abbs no longer lives at the property. *Id*. at 2. The GRP Defendants are entitled to summary judgment on the Bellamys's claims because they purchased their property after the Plant began operating and failed to request an abatement of the Plant's activities, to the extent they allege they have suffered harm because of vibrations, and to the extent they allege their property has diminished in value.

First, the Bellamys moved to their property in 2020, after the Plant began operating, and purchased it in 2021 with full knowledge of the Plant.  Beth Bellamy Dep. 16:14-16; Mark Bellamy Dep. 4:21-5:5;  Mark Bellamy's Responses to Georgia Renewable Power, LLC's First Interrogatories at ¶ 8. The Bellamys never attended any County Commissioner meetings where the GRP Defendants were present and never spoke to anyone at the Plant to request an abatement. Beth Bellamy Dep. 14:7-22; Mark Bellamy Dep. 39:20-40:13. "[If] 'a person comes into

possession of property upon which there is an existing nuisance, before an action can be maintained against such person for continuing the nuisance it is essential that there should be a request to abate it before any liability for maintaining the same would arise.'" *Roughton v. Thiele Kaolin Co.*, 74 S.E.2d 844, 847 (Ga. 1953); *Wiggin v. Horne*, 512 S.E.2d 247, 248 (Ga. 1999) (barring the plaintiff's nuisance claim where he testified he purchased his property with full knowledge of an air strip and planes landing on the air strip because he "may not complain about conditions existing upon the property at the time of purchase.").

Second, the Bellamys's allegations in their complaint are contrary to their own experience. Mr. and Mrs. Bellamy have never felt a vibration from the Plant.  Beth Bellamy Dep. 16:1-3; Mark Bellamy Dep. 48:13-15.

Third, the Bellamys are not familiar with property values in the area other than an appraisal on their property in 2020 that valued the property at $785,000 (more than $200,000 more than Plaintiffs' appraiser) and did not contain a discount for the Plant, despite the fact it was fully operational at the time.  Mark Bellamy Dep. at 24:3-8, 60:13-25; Beth Bellamy Dep. at 20:13-15; Exhibit 212 to Biggers Dep. at 2.

*N.*      **3:21-cv-53–Gettys**

Plaintiffs Donnie Gettys and Tracey Gettys (collectively, the "Gettyses") allege energy production activities at the Plant have caused excessive and unabated noise, vibrations, light, and odor. [Doc. 1-1 at 12]. The GRP Defendants are entitled to summary judgment on the Gettyses' claims to the extent they allege they have suffered harm because of odor and that their property has diminished in value.

First, the Gettyses' allegations in their complaint are contrary to their own experience. The alleged odor from the Plant does not bother Ms. Gettys, and Mr. Gettys agrees it is something he can live with.  Tracey Gettys Dep. 8:6-18; Donnie Gettys Dep. 70:10-16.

35

Second, the Gettyses cannot say one way or the other whether an assessed value of their property is correct and do not know what it is worth.  Donnie Gettys Dep. 25:12-14; 73:5-15.

### O.    3:21-cv-54–Smith

Plaintiffs Jeffrey S. Smith and Kristen L. Smith (collectively, the "Smiths") allege energy production activities at the Plant have caused excessive and unabated noise and vibrations. [Doc. 1-1 at 12. The properties at issue in this case are located at 333 Edward McFarlin Road and 1240 New Bethel Road, Franklin County, Carnesville, Georgia, 30521. *Id*. at 7.The GRP Defendants are entitled to summary judgment on the Smiths' claims to the extent they allege they have suffered harm because of vibrations and that their property has diminished in value.

First, the Smith's allegations in their complaint are contrary to their own experience. Neither Mr. nor Mrs. Smith has experienced vibrations from the Plant.  Jeffrey Smith Dep. 70:25-71:2; Kristen Smith Dep Dep. 38:4-12. Additionally, the Smith's property is 1.2 miles from the Plant.  Exhibit 214 of Biggers Dep. at 12. The Smiths have presented no evidence of feelable vibrations caused by the Plant and testified there are none.

Second, the Smiths have not presented any evidence of diminution in value. The Smiths do not know whether their property values have decreased as a result of the Plant and cannot say one way or the other.  Jeffrey Smith Dep. 43:23-44:3; Kristen Smith Dep. 18:19-19-20:2. Additionally, even if Plaintiffs' expert appraiser's opinions were allowed, he did not appraise the 1240 New Bethel Road tract, and therefore only appraised 49.48 acres of the 117 total acres belonging to the Smiths.  Exhibit 214 of Biggers Dep. at 12, at 1; Jeffrey Smith Dep. 11:4-16. As such, there is no evidence of any diminution in value to the 1240 Bethel Road property.

### P.    3:21-cv-55–Pruitt

Plaintiffs Rada Sue Pruitt, Justin Pruitt (collectively, the "Pruitts"), and Christy McKenzie allege energy production activities at the Plant have resulted in noise, vibrations, light, odor, and

smoke. [Doc. 16 in 3:21-cv-42 at 2]. The GRP Defendants are entitled to summary judgment on the Pruitts's and Ms. McKenzie's claims to the extent they allege they have suffered harm because of vibrations or smoke, that Ms. McKenzie has suffered harm from light, and that their property has diminished in value.

First, Ms. McKenzie and the Pruitts's[12] allegations in the complaint are contrary to their own experience. Mr. Pruitt does not feel vibrations at all, and Ms. McKenzie associates the vibrations with trucks on the road because she cannot think of a time where she felt a vibration and it was not caused by a truck driving by on the road.  Pruitt Dep. 40:10-12; McKenzie 16:8-20. Further, Ms. McKenzie is not alleging any damages from the light because it does not bother her. McKenzie Dep. 1722-18:1. Finally, the smoke does not bother either Mr. Pruitt or Ms. McKenzie. Pruitt Dep. 45:8-13; McKenzie Dep. 20:16-17.

Second, the Pruitts and Ms. McKenzie have not presented any evidence of diminution in value. Ms. McKenzie is not alleging any damage to her property value at all, and Mr. Pruitt has no reason to dispute an assessed value of his property and has no information to support his opinion his property has diminished in value.  McKenzie Dep. 21:15-17; Pruitt Dep. 15:6-17:22.

### *Q.*      **3:21-cv-56–Schiffer**

Plaintiffs Jeremy Schiffer, Judy Schiffer, Corey Schiffer, and Wendy Schiffer (collectively, the "Schiffers") allege energy production activities at the Plant have caused excessive and unabated noise, vibrations, light, odor, and smoke. [Doc. 1-1 at 12]. The GRP Defendants are entitled to summary judgment on the Schiffers's claims to the extent they allege their property has diminished in value and that they are suffering harm from vibrations at their property.

---

[12] Rada Sue Pruitt passed away during the pending litigation, before her deposition could be taken, and Justin Pruitt is the representative of her estate.

First, the Schiffers do not have an opinion as to the value of their property.  Jeremy Schiffer Dep. 31:22-25; Judy Schiffer Dep. 16:12-21; Corey Schiffer Dep. 47:16-18.

Second, the Schiffers have no evidence of vibrations. The Schiffers's property is 0.8 to 0.9 miles from the Plant.  Exhibits 190-193 of Biggers Dep., at 4.

**R.      3:21-cv-57–Pearcy**

Plaintiffs Rodney Pearcy, Gina Pearcy (collective, the "Pearcys"), and Melissa Roberson allege energy production activities at the Plant have caused excessive and unabated noise, vibrations, and odor. [Doc. 1-1 at 12]. The GRP Defendants are entitled to summary judgment on the Pearcys' and Roberson's claims to the extent they allege their property has diminished in value and that they are suffering harm from vibrations at their property.

First, the Pearcys and Roberson do not know the value of their house if they were to sell. R. Pearcy Dep. 38:2-4; G.Pearcy Dep. 26:2-8.

Second, the Pearcys and Roberson have no evidence of vibrations. The Pearcys' and Roberson's properties are 0.7 miles from the Plant.  Exhibit 194 of Biggers Dep., at 4.

**S.      3:21-cv-58–O'Connor**

Plaintiffs Bruce O'Connor and Jeanne O'Connor (collectively, the "O'Connors") allege energy production activities at the Plant have resulted in noise, vibrations, odor, and smoke. [Doc. 1-1 at 16.] The GRP Defendants are entitled to summary judgment on the O'Connors's claims to the extent they allege they have suffered harm because of vibrations, odor, or smoke, and that their property has diminished in value.

First, the O'Connors's allegations in their complaint are contrary to their own experience. Noise is the only alleged emission that bothers the O'Connors. Neither Mr. nor Mrs. O'Connor is bothered by vibrations, odor, or smoke from the Plant.  Bruce O'Connor Dep 33:3-34:18; Jeanne

O'Connor Dep. 43:22-24; 44:14-16; 45:17-21. Additionally, concerning vibrations, the O'Connors's property is 1 mile from the Plant. Jeanne O'Connor Dep. 18:14-16.

Second, the O'Connor's do not have any knowledge of what their property is worth. Bruce O'Connor Dep. 17:5-9; Jeanne O'Connor Dep. 15:7-10.

### T.    3:21-cv-59–McCall

Plaintiffs Dennis and Gwen McCall (collectively, the "McCalls") allege energy production activities at the Plant "will continue to interfere with Plaintiffs' right of quiet enjoyment of their property". [Doc. 1-1 at 12]. The GRP Defendants are entitled to summary judgment on claims of Plaintiffs Dennis and Gwen McCall to the extent they claim continuing nuisance and a diminution in property value because the McCalls have not presented evidence of either. They sold their house in Franklin County on August 3, 2020, and did not factor the Plant into the sales price. Dennis McCall Dep. 14:23-15:1; 16:1-17:11. The McCalls no longer live on the property and instead now live in South Carolina. *Id*. at 5:19-24.

### U.    3:21-cv-60–Higgins

The GRP Defendants are entitled to summary judgment on the claims of Plaintiffs Willis Gary Higgins and Brenda Ray Higgins (collectively, the "Higgins") to the extent they claim a diminution in property value and to the extent they allege they suffered harm from vibrations.

First, the Higgins have not tried to sell their property and are not familiar with property values in the area. B. Higgins Dep. 43:23-44:8; W. Higgins Dep. 25:2-22.

Second, the Higgins believe the only vibrations are coming from truck traffic. B. Higgins Dep. 28:10-25; W. Higgins Dep. 59:17-20, 61:1-3.

*V.*      **3:21-cv-61–Jinks**

The GRP Defendants are entitled to summary judgment on the claims of Plaintiffs Brett and Vanessa Jinks to the extent they claim a diminution in property value and to the extent they claim harm from vibrations.

First, the Jinks have not presented any evidence of diminution in value. Mr. Jinks believes his property is worth "way more" than its tax assessed value of $184,036.00 because of the market. Brett Jinks Dep. 20:4-17. The Jinks have had several offers to purchase their property, and they are not interested in selling.  Vanessa Jinks Dep. 11:12-18.

Second, the Jinks's property is 0.7 miles from the Plant.  Exhibit 200 of Biggers Dep., at 4

*W.*      **3:21-cv-62–Hart**

Plaintiffs Arlen Hart and Angie Hart (collectively, the "Harts") allege energy production activities at the Plant have caused excessive and unabated noise, vibrations, and odor which. [Doc. 1-1 at 12]. The GRP Defendants are entitled to summary judgment on the Harts' claims to the extent they allege their property has diminished in value and that they are suffering harm from vibrations at their property.

First, the Harts do not know the value of their house if they were to sell.  Angela Hart Dep. 29:8-10; Arlen Hart Dep. 44:4-15.

Second, the Harts have presented no evidence of vibrations. The Harts' property is 0.6 miles from the Plant.  Angela Hart Dep. 11:1-2.

*X.*      **3:21-cv-63–Harris**

Plaintiffs Derek Harris and Michelle Harris (collectively, the "Harris'") allege energy production activities at the Plant have caused excessive and unabated noise, vibrations, light, and odor. [Doc. 1-1 at 12]. The GRP Defendants are entitled to summary judgment on the Harris's claims to the extent they allege they have suffered harm because of odor or vibrations, that their

property has diminished in value, and for continuing nuisance and loss of the use and enjoyment of their property.

First, the Harris's allegations in their complaint are contrary to their own experience. Neither Mr. nor Mrs. Harris has ever smelled an odor from the Plant.  Michelle Harris Dep 14:8-15; Derek Harris Dep. 31:23-25.

Second, the Harris' have no evidence of vibrations. The Harris's property is 0.8 miles from the Plant.  Exhibit 202 of Biggers Dep. at 32.

Third, the Harris' have no evidence of diminution in value. The Harris' do not have any knowledge of what their property is worth.  Derek Harris Dep. 35:18-23.

Fourth, the Harris' do not live at the property, did not visit the property between September 2021 and February 18, 2022, and primarily only visit the property in the Summer. D. Harris Dep. 31:4-6, 33:21-23; M. Harris Dep. 15:8-21, 77:16-25.

   *Y.*      **3:21-cv-64–Dickens**

Plaintiff Kenneth Dickens ("Dickens") alleges energy production activities at the Plant have resulted in noise and vibrations that "will continue to interfere with Plaintiffs' right of quiet enjoyment of his property." [Doc. 1-1 at 12]. The GRP Defendants are entitled to summary judgment on Dickens's claims to the extent he alleges continuing nuisance, that his property has diminished in value, and that he has suffered harm from vibrations at his property.

First, Dickens has presented no evidence of a continuing nuisance. Dickens sold his property in Franklin County in March 2021 and no longer lives there.  Dickens Dep. 16:10-16; 28:13-25.

Second, Dickens has not presented any evidence of diminution in value. Dickens sold his property during the course of the lawsuit for $353,000, and he presented no evidence that this was a diminished value due to the presence of the Plant.  Dickens Dep. 16:7-17:7. He does not have

knowledge of property values in the area and does not know whether anyone in Franklin County has had a problem selling their property. *Id.* Additionally, Dickens's property is adjacent to an inert landfill that his real estate appraiser expert, Biggers, testified is a negative externality decreasing the value of properties like the Dickens property.  Biggers Dep. at 60:3-7.

Third, Dickens has no evidence of vibrations. Dickens's property in Franklin County, when he owned it, was 0.9 miles from the Plant.  Exhibit 188 of Biggers Dep., at 4.

### Z.      3:21-cv-65–Langston

The GRP Defendants are entitled to summary judgment on the claims of Plaintiffs Debra Langston and Nathaniel Langston (collectively, the "Langstons") to the extent they claim a diminution in property value. The Langstons do not have any knowledge of property values in the area, and Mrs. Langston believes the property "just needs maintenance and it will be more valuable."  Nathaniel Langston Dep. 11:21-25; Deborah Langston Dep. 15:15-25; 17:11-21.

## CONCLUSION

For the reasons set forth above, the GRP Defendants request the Court enter summary judgment in their favor:

(A)      On all Plaintiffs' nuisance claims because the Plant is not a nuisance as a matter of law; or alternatively:

      i.      On all Plaintiffs' nuisance claims to the extent they allege the Plant was (and is) a nuisance beyond June 2021 because the Plant is an "agricultural support facility" that is operating within the law; or

      ii.      On all Plaintiffs' nuisance claims to the extent they allege a nuisance existing beyond April 2022 because there is no evidence to support a finding of nuisance beyond that date;

(B)     On all Plaintiffs' negligence claims because Plaintiffs cannot show the GRP Defendants have breached any duty that caused Plaintiffs' harm;

(C)     On all Plaintiffs' claims for punitive damages because summary judgment is appropriate on Plaintiffs' substantive claims and there is no evidence of egregious conduct justifying an award of punitive damages;

(D)     On all Plaintiffs' claims for attorneys' fees because Plaintiffs' substantive claims fail and there is no evidence the GRP Defendants have acted in bad faith, been stubbornly litigious, or caused unnecessary trouble and expense;

(E)     On all Plaintiffs' claims to the extent Plaintiffs failed to disclose any computation of damages;

(F)     On all Plaintiffs' claims to the extent they seek to recover for diminution of value of their property because they presented no evidence of such diminution if the opinions of Michael Biggers are excluded;

(G)     On Plaintiffs' claims that they are harmed by vibrations caused by the Plant in the following cases: Millen (3:21-cv-42); Sweatman (3:21-cv-44); Elrod (3:21-cv-47); Baker (3:21-cv-48); Ayers (3:21-cv-49); Mark and Mayra Blalock (3:21-cv-50); Michael Blalock (3:21-cv-51); Abbs/Bellamy (3:21-cv-52); Smith (3:21-cv-54); Pruitt (3:21-cv-55); Schiffer (3:21-cv-56); Pearcy (3:21-cv-57); O'Connor (3:21-cv-58); Higgins (3:21-cv-60); Jinks (3:21-cv-61); Hart (3:21-cv-62); Harris (3:21-cv-63); Dickens (3:21-cv-64); and

(H)     On Plaintiffs' claims in individual cases as follows:

      i.   (3:21-cv-42) Millen: on all claims as a result of Plaintiff's failure to present any evidence of harm from the Plant;

      ii.  (3:21-cv-43) Nesmith: on the claims to the extent they are based on allegations of harm caused by smoke or claims of personal injury;

43

iii. (3:21-cv-48) Baker: on the claims to the extent she alleges she suffered lost farming income;

iv. (3:21-cv-52); Bellamy: on all claims as a result of Plaintiffs' purchase of their Property with full knowledge of the Plant and failure to request an abatement;

v. (3:21-cv-53) Gettys: on the claims to the extent they allege harm as a result of odors emanating from the Plant;

vi. (3:21-cv-55) Pruitt: on the claims to the extent they allege harm as a result of smoke emanating from the Plant  and, concerning Plaintiff Ms. McKenzie, to the extent she alleges harm as a result of light emanating from the Plant;

vii. (3:21-cv-58) O'Connor: on the claims to the extent they allege harm as a result of odor and smoke emanating from the Plant;

viii.  (3:21-cv-59) McCall: on the claims to the extent they allege a nuisance continuing after August 3, 2020;

ix. (3:21-cv-63) Harris: on claims of continuing nuisance and loss of enjoyment because they do not live on their property and on the claims to the extent they allege harm as a result of odor emanating from the Plant; and

x. (3:21-cv-64) Dickens: on the claims to the extent they allege harm as a result of a continuing noise nuisance existing after March 2021.

[Signature on Following Page]

This 30th day of September, 2022.

*/s/ M. Anne Kaufold-Wiggins*
M. Anne Kaufold-Wiggins
Georgia Bar No. 142239
awiggins@balch.com
Hugh Peterson III
Georgia Bar No. 574212
hpeterson@balch.com
Brittany Temple
Georgia Bar No. 627292
btemple@balch.com
**BALCH & BINGHAM LLP**
30 Ivan Allen Jr. Blvd. N.W., Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656

Edwin Schwartz
Georgia Bar No. 631037
**SWEETNAM & SCHWARTZ**
1050 Crown Pointe Parkway, Suite 500
Atlanta, Georgia 30338
Telephone: (470) 395-7842
Facsimile: (770) 234-6779
ess@mseslegal.com

*Attorneys for Defendants Georgia Renewable Power, LLC and GRP Franklin, LLC d/b/a GRP Franklin I, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of September, 2022, a copy of the foregoing has

been served via statutory electronic service as follows:

Michael D. McRae
Virginia Barrow Harman
Jason B. Sanker
John F. Lee Niedrach
Linton S. Johnson, III
**McRAE, SMITH, PEEK, HARMAN & MONROE, LLP**
111 Bridgepoint Plaza, Suite 300
Rome, Georgia 30161
mmcrae@msp-lawfirm.com
vharman@msp-lawfirm.com
jsanker@msp-lawfirm.com
lniedrach@msp-lawfirm.com
ljohnson@msp-lawfirm.com

David A. Dial
Stephen J. Rapp
J. Alexander Prescott
**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**
3344 Peachtree Road, Suite 2400
Atlanta, Georgia 30326
ddial@wwhgd.com
srapp@wwhgd.com
jprescott@wwhgd.com

*/s/ **M. Anne Kaufold-Wiggins***
M. Anne Kaufold-Wiggins
Georgia Bar No. 142239