IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

AGNES MILLEN, *et al.*,          *

    Plaintiffs,              *

vs.                          *

                                CASE NO. 3:21-CV-42 (CDL)

GEORGIA RENEWABLE POWER, LLC,     *
*et al.*,

                     *

    Defendants.              *

_____  *

O R D E R

    Defendants own and operate a biomass power generation plant in Franklin County, Georgia. Plaintiffs, who own or occupy real property near the plant, contend that the plant causes excessive noise, vibrations, light, odor, and smoke that impact their properties. Plaintiffs assert claims against Defendants for nuisance and negligence. Presently pending before the Court are Defendants' motions to exclude opinions of David Nelson (ECF Nos. 42 & 49), Defendants' motions to exclude opinions of Michael Biggers (ECF Nos. 44 & 50), and Defendants' summary judgment motions (ECF Nos. 48 & 51). As discussed in more detail below, the Court denies the motions to exclude Nelson and Biggers. Defendants' summary judgment motions are granted in part and denied in part. The Court grants Defendants' summary judgment motion on the following claims:

♦ All claims brought by Agnes Millen (3:21-cv-42) and the Bellamys (3:21-cv-52);

♦ All claims based on alleged nuisances other than noise, vibrations, and emissions of particulate matter;

♦ All continuing nuisance claims based on air quality issues after June 2020;

♦ Continuing noise nuisance/negligence claims asserted by the Elrods (3:21-cv-47), Sheila Baker (3:21-cv-48), Brandon Ayers (3:21-cv-49), Mark and Mayra Blalock (3:21-cv-50), Mike Blalock (3:21-cv-51), Linda Abbs (3:21-cv-52), the Smiths (3:21-cv-54), the Schiffers (3:21-cv-56), the Pearcys (3:21-cv-57), Bruce O'Connor (3:21-cv-58), the McCalls (3:21-cv-59), the Higginses (3:21-cv-60), the Jinkses (3:21-cv-61), the Harts (3:21-cv-62), the Harrises (3:21-cv-63), Kenneth Dickens (3:21-cv-64), and the Langstons (3:21-cv-65);

♦ Nuisance/negligence claims based on vibrations asserted by the Sweatmans (3:21-cv-44), the Elrods (3:21-cv-47), Sheila Baker (3:21-cv-48), Brandon Ayers (3:21-cv-49), Mark and Mayra Blalock (3:21-cv-50), Mike Blalock (3:21-cv-51), Linda Abbs (3:21-cv-52), the Smiths (3:21-cv-54), the Pruitts and Christy McKenzie (3:21-cv-55), the Schiffers (3:21-cv-56), Bruce O'Connor (3:21-cv-58), the Higginses (3:21-cv-60),the Jinkses (3:21-cv-61), the Harrises (3:21-cv-63), and Kenneth Dickens (3:21-cv-64).

The following claims remain for trial:

♦ Noise nuisance claims (and negligence claims based on the same conduct) through September 2021, asserted by the Elrods (3:21-cv-47), Sheila Baker (3:21-cv-48), Brandon Ayers (3:21-cv-49), Mark and Mayra Blalock (3:21-cv-50), Mike Blalock (3:21-cv-51), Linda Abbs (3:21-cv-52), the Smiths (3:21-cv-54), the Schiffers (3:21-cv-56), the Pearcys (3:21-cv-57), Bruce O'Connor (3:21-cv-58), the McCalls (3:21-cv-59), the Higginses (3:21-cv-60), the Jinkses (3:21-cv-61), the Harts (3:21-cv-62), the Harrises (3:21-cv-63), Kenneth Dickens (3:21-cv-64), and the Langstons (3:21-cv-65); and

♦ Continuing nuisance claims (and negligence claims based on the same conduct) asserted by James Nesmith (3:21-cv-43 – noise and vibration), the Sweatmans (3:21-cv-44 – noise

only), the Wilsons (3:21-cv-45 – noise and vibrations), Powers and Alexander (3:21-cv-46 - noise and vibrations), the Gettyses (3:21-cv-53 – noise and vibrations), the Pruitts and Christy McKenzie, (3:21-cv-55 - noise only), the McCalls (3:21-cv-59 – vibrations only), the Harts (3:21-cv-62 – vibrations only), and the Langstons (3:21-cv-65 – vibrations only).

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Georgia Renewable Power, LLC and GRP Franklin, LLC ("GRP Defendants") own a biomass power generation plant ("Franklin Plant") in Franklin County, Georgia. Veolia Energy Operating Services, LLC operates the Franklin Plant, though large-scale capital projects require the GRP Defendants' approval. At the Franklin Plant, "biomass fuel" is wood products, including wood

chips, scrap wood, and wood left over from timbering.  Rock Dep. 24:1-6, ECF No. 141.  A bulldozer feeds the biomass fuel into a conveyer that moves the biomass fuel to a boiler, where the biomass fuel is burned to heat water and generate steam that turns a turbine generator.

Because a biomass power generation plant like the Franklin Plant must be built in an area where there is enough fiber or woody biomass to supply the plant's needs, the GRP Defendants selected the Franklin Plant's location because they anticipated an adequate wood supply in the area.[1]  The main site of the Franklin Plant is in a rural area of Franklin County, and it has been zoned commercial industrial since 2005.  Veolia's Mot. Summ. J. Ex. E, Letter from H. Gillespie to B. Jones (Mar. 6, 2006), ECF No. 48-6.  In 2015, the GRP Defendants obtained the necessary permits for the Franklin Plant, including an Air Quality Permit as required by the Georgia Air Quality Act, O.C.G.A. § 12-9-1 *et seq*.  Veolia's Mot. Summ. J. Ex. I, Air Quality Permit 1, ECF No. 48-10.  The GRP Defendants also requested and received rezoning of two adjacent parcels from agricultural intensive to commercial industrial so that they could build parking lanes for trucks unloading near the Franklin Plant.  Most of the property immediately surrounding the Franklin Plant is zoned agricultural or agricultural intensive,

---

[1] Veolia was not involved in the site selection, design, or construction of the Franklin Plant.

although there are two small adjacent parcels zoned rural residential.

Construction of the Franklin Plant began in July 2017, and the Franklin Plant became operational for a commissioning period in May 2019. During the commissioning period, the plant operator conducts tests and performance evaluations so that the operator can correct any problems before beginning routine operations. The GRP Defendants did not instruct their contractor regarding any far-field noise requirements, and they did not know what consideration their contractor gave to noise output or silencing equipment. Davis Dep. 74:21-77:8, ECF No. 104. Veolia assumed operation of the Franklin Plant in December 2019. Due to issues with startup, the commissioning period lasted until February or March 2020.

During the commissioning period, there were many shutdowns and startups of the plant, which led to loud steam releases caused by operation of the steam turbine valve. Generally, there should not be more than two steam releases during a year. Davis Dep. 59:5-6. But during the commissioning period at the Franklin Plant, there were more than 100 steam releases. *Id.* at 59:11-17. In February 2020, Plaintiffs' expert made recordings during a steam event that lasted for about an hour, with sound levels up to 86 dBAs (A-weighted decibels). Nelson Dep. 95:21-24, 129:17-130:9, ECF No. 119. According to Plaintiffs' expert, "a 55 normalized

day/night   sound   level   is   appropriate   for   a   residential
environment."   Nelson Dep. 9:13-16.   The sound levels at the
Franklin Plant "far exceed[ed] that" at certain locations.   *Id.* at
9:16-17.

Franklin   County's   nuisance   ordinance   does   not   contain
specific restrictions on noise or chemical emissions.   It does
prohibit the "generation of smoke or fumes in sufficient amounts
to cause odor or annoyance to inhabitants of the county."   Franklin
Cnty. Nuisance Ordinance § 18-3(3), http://franklincountyga.test-
civiccms.acsitefactory.com/sites/g/files/vyhlif6256/f/uploads/fc
_nuisance_ordinance_2002.pdf.   It   also   prohibits   "[a]ny   other
condition   constituting   a   nuisance   under   state   law."   *Id.* § 18-
3(12).   The nuisance ordinance permits the county commission to
order the abatement of "any nuisance that is a nuisance per se in
the law or where the case is an urgent one and the health and
safety of the public or a portion thereof is in imminent danger."
*Id.* § 18-6.

The Franklin Plant's neighbors started complaining about the
plant during the commissioning period in 2019, mostly about the
noise from the plant.   In December 2019, the Franklin County Board
of Commissioners issued a "Notice of Violation" stating that the
"continual   and   ongoing   noise   levels   and   chemical   emissions"
produced by the Franklin Plant constituted "a nuisance" under § 18-
6 of the nuisance ordinance and "created a public emergency where

the health and safety of the residents in the immediate vicinity of the plant are in imminent danger." GRP Defs.' Mot. Summ. J. Ex. 10, Notice of Violation 1 (Dec. 18, 2019), ECF No. 51-12. The Notice of Violation stated that it was "a statement from Franklin County" that its nuisance ordinance was being violated. *Id.* It gave the GRP Defendants thirty days to reduce noise to "reasonable" levels ("60-70 decibels at the boundary of the property and within the two-mile radius of the operation") and reduce chemical emissions like carbon monoxide and particle pollution to specified levels. *Id.*

Defendants later received notice that the Georgia Department of Natural Resources determined that the Franklin Plant violated its air quality permit. GRP Defs.' Mot. Summ. J. Ex. 11, Letter from S. Taylor to C. Davis (Apr. 2, 2020), ECF No. 51-13. The GRP Defendants entered a consent order that required the Franklin Plant to comply with certain limits on emissions of particulate matter. Veolia's Mot. Summ. J. Ex. BS, Letter from R. Dunn to C. Davis 1 (June 1, 2020), ECF No. 48-71. The parties did not point to evidence of a subsequent air quality violation.

The frequency of steam releases decreased after the commissioning period. By July 2022, the steam releases happened about once a week, though Defendants continued to work on reducing their frequency. Tanis Dep. 59:17-60:10, ECF No. 109. Defendants conducted a noise study in late 2019 and implemented sound

abatement measures between December 2019 and the summer of 2022. Those mitigation measures included installation of a silencer on the induced draft fans in September 2021 and installation of new conveyors that permitted Defendants to retire the fuel drying fans in April 2022.[2]  Defendants assert that the noises coming from the Franklin Plant were significantly reduced, though Plaintiffs' sound expert testified that low frequency sounds that can cause vibrations got worse.  Nelson Dep. 220:6-17.  Some Plaintiffs experienced vibrations from the Franklin Plant that caused rattling of their windows and pictures on their walls.

## DISCUSSION

Plaintiffs assert claims against Defendants for nuisance and negligence.[3]  They also seek punitive damages, as well as attorney's fees and expenses under O.C.G.A. § 13-6-11.  Defendants contend that they are entitled to summary judgment on all of Plaintiffs' claims.  To create a genuine fact dispute on their claims, Plaintiffs rely on expert testimony.  Defendants argue

---

[2] Another of Defendants' noise-reducing measures was to limit the hours during which noisy track dozers run, but Plaintiffs pointed to evidence that Defendants sometimes ran the track dozers when they should not have been run.  Groves Dep. 72:2-21, ECF No. 112.  It is not clear from the present record how loud the track dozers are in terms of decibels.

[3] Plaintiffs originally filed twenty-four separate actions in the Superior Court of Franklin County, Georgia.  Defendants removed the actions to this Court based on diversity jurisdiction because Plaintiffs are Georgia citizens, Defendants are Delaware limited liability companies whose members are not Georgia citizens, and the amount in controversy in each action exceeded $75,000.  The Court consolidated the twenty-four actions.  Order to Consolidate (May 24, 2021), ECF No. 9.

that the Court should exclude some testimony of Plaintiffs' experts and that Plaintiffs cannot prove their claims without that testimony. The Court will thus begin its analysis with the motions to exclude the expert witnesses.

## I.   Defendants' Motions to Exclude Plaintiffs' Experts

Plaintiffs rely on two experts—David Nelson and Michael Biggers. Defendants contend that they should not be permitted to offer opinion testimony under Federal Rule of Evidence 702. "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if" his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" his "testimony is based on sufficient facts or data" and "is the product of reliable principles and methods;" and he "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

In evaluating the admissibility of expert testimony, the Court must consider whether "the expert is qualified to testify competently regarding the matters he intends to address," whether his methodology "is sufficiently reliable," and whether his testimony will help the trier of fact "understand the evidence or to determine a fact in issue." *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1294 (11th Cir. 2022) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The Court's

goal is to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). To allow the testimony to be considered by the jury, the Court must find that "'it is properly grounded, well-reasoned, and not speculative.'" *Id*. (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments).

A.   Motions to Exclude David Nelson (ECF Nos. 42 & 49).

David Nelson is a mechanical engineer with a bachelor's degree in mechanical engineering from the Massachusetts Institute of Technology and a master's degree in mechanical engineering from the University of Texas at Austin. He has been a mechanical engineer for nearly forty years. Nelson specializes in noise control engineering and is a fellow in the Institute of Noise Control Engineering. His professional specialties include environmental noise and industrial noise control. Among other things, Nelson co-authored a section entitled "Power Plant Noise and Its Control" in the "Standard Handbook of Powerplant Engineering." Pls'. Resp. to Defs.' Mot. to Exclude Nelson Ex. C, Nelson CV 1, ECF No. 145-3.

Plaintiffs hired Nelson to document and analyze the sound emitted from the Franklin Plant.  Defendants do not criticize sound measurements Nelson took, but they contend that he is not competent to render some of his opinions and that other opinions suffer from flawed methodology.  First, Defendants contend that Nelson's "design and construction" opinions should be excluded because Nelson acknowledges that he is not an expert in designing and constructing a power plant.  But he *is* an expert in measuring noise emissions and managing noise emissions from a power plant, and he knows how to engineer solutions to reduce noise emissions.  He is the type of engineer that specializes in noise and vibration control, including at power plants.  The Court thus rejects Defendants' assertion that Nelson is unqualified to opine about the design and construction of noise control methods at the Franklin Plant.  He is qualified.[4]

Defendants contend that even if Nelson is qualified to offer opinions in this action, his opinions on sound levels (other than his "actual measurements") are the product of unreliable methodology.  In reaching his opinion that the noise from the Franklin Plant is too loud, Nelson relied on standards developed by the American National Standards Institute for noise assessment,

---

[4] Plaintiffs agree that Nelson should not be permitted to make a legal conclusion that the Franklin Plant is a legal nuisance, and Nelson does not intend to proffer such an opinion.

as well as the work of fellow acoustical engineer George Hessler, who proposed criteria for maximum sound emissions from industrial sources in rural areas.  Regarding the ANSI standards, Defendants argue that Nelson improperly double-counted on one calculation, but Nelson explained why he believes that his calculation was correct and noted that even if he performed the calculation the way Defendants' counsel suggested he should, the level was still far too high.  Nelson Dep. 170:14-172:9.  As for Nelson's reliance on the work of Hessler, Defendants note that Hessler's proposal (industrial sound levels should not exceed 60 decibels in a rural area) has not been incorporated into a regulation or standard. But Hessler's proposal was in an article that was published in the Noise Control Engineering Journal, and Defendants did not point to any evidence or authority that an expert in the field of noise control engineering may not rely on such an article in reaching his opinion.  Defendants also point out that Hessler's article focused on open-cycle combustion turbines, which are not used at the Franklin Plant, although his article did say that the "proposed criterion should be applicable to most industrial sources of steady low-frequency noise in addition to combustion turbines."  Pls'. Resp. to Defs.' Mot. to Exclude Nelson Ex. D, Hessler, George, "Proposed criteria in residential communities for low-frequency noise emissions from industrial sources," Noise Control Eng'g J. 52 (4):179, July-August 2004, ECF No. 145-4.  The Court thus finds

that Defendants have not established that Nelson's reliance on the Hessler article renders his opinion unreliable.

Defendants also argue that Nelson's methodology is flawed because he did not take sound measurements at four of the properties at issue in this action.  But Nelson asserts that he used an industry accepted methodology for sound modeling—the ISO9613-2 method—which is the same predictive modeling method that Defendants' expert used.  *See* GRP's Mot. Summ. J. Ex. 2, Brewe Rep. 7-1, ECF No. 51-4 at 24.  The Court thus finds that it need not exclude Nelson's opinions in the four cases where he did not conduct on-site sound measurements.[5]

In addition to his opinions about the noise emanating from the Franklin Plant, Nelson opines that the Franklin Plant emits low-frequency sounds that could result in perceptible vibrations up to half a mile from the Franklin Plant, though the vibrations are only perceived in a structure (e.g., rattling windows).  Nelson Dep. 54:14-24; 178:1-14.  Nelson bases his opinion on a theory called the Hubbard Curve.  Nelson measured low frequency sounds at some of the properties and used the Hubbard Curve to determine whether the sounds were loud enough to cause perceptible

---

[5] Defendants also note that Nelson only took measurements at six properties after Defendants installed a silencer in September 2021, and they contend that Nelson's opinions on post-September 2021 noise levels at the other properties should be excluded.  As discussed in more detail below, Plaintiffs did not clearly point to evidence that Nelson offered an opinion about the sound levels at properties other than the six he measured; this does not appear to be a Rule 702 issue.

vibrations.  The Hubbard Curve was included in a 1991 article in the Noise Control Engineering Journal.  Defendants argue that because (a) a piece of equipment can measure the presence of vibrations and (b) no engineering standards or government regulations have adopted the Hubbard Curve, use of the Hubbard Curve is not reliable methodology.  But, according to Nelson, the Hubbard Curve is widely used in the industry.  The Court finds that these issues go to the weight of Nelson's testimony, not its admissibility.  The Court also rejects Defendants' assertion that Nelson's testimony on this issue will not assist the trier of fact; his testimony can help the trier of fact determine whether the vibrations certain Plaintiffs say they experienced were caused by the Franklin Plant.  For these reasons, the Court declines to exclude Nelson's testimony about vibrations.

In summary, the Court denies Defendants' motion to exclude Nelson's expert testimony (ECF Nos. 42 & 49).

B.   Motions to Exclude Michael Biggers (ECF Nos. 44 & 50).

Michael Biggers is a certified real estate appraiser who has been performing real estate appraisals in Georgia, including Franklin County, for more than thirty years.  Plaintiffs hired Biggers to determine the diminution in Plaintiffs' property values caused by the Franklin Plant.  Defendants do not challenge Biggers's qualifications, but they do contend that his testimony

is not supported by sufficient facts or data and that he did not use reliable methodology.

Biggers produced appraisal reports for most of the properties at issue in this action, and he opines that there was a diminution in value for each property. But, as discussed in more detail below, diminution is the proper measure of damages only if there is a *permanent* nuisance. *City of Gainesville v. Waters*, 574 S.E.2d 638, 642 (Ga. Ct. App. 2002); *accord City of Warner Robins v. Holt*, 470 S.E.2d 238, 241 (Ga. Ct. App. 1996). And, as discussed in more detail below, Plaintiffs in only nine actions presented evidence to create a fact dispute on whether they suffered a permanent nuisance: James Nesmith (3:21-cv-43), the Sweatmans (3:21-cv-44), the Wilsons (3:21-cv-45), Alexander and Powers (3:21-cv-46), Donnie Gettys (3:21-cv-53), the Pruitts (3:21-cv-55), the McCalls (3:21-cv-59), the Harts (3:21-cv-62), and Nathaniel Langston (3:21-cv-65). Therefore, the Court is not convinced that Biggers's opinions regarding diminution in value of the other properties is relevant, and the Court finds no reason to evaluate the admissibility of Biggers's opinions regarding those properties.

Defendants' motion to exclude Biggers does not clearly and specifically address the nine individual appraisal reports for the properties where diminution in value remains relevant.

♦ Appraisal Report for James Nesmith. Biggers Dep. Ex. 185, ECF No. 127-6. Biggers analyzed the property's value using the cost approach and the sales comparison (market) approach. For the sales comparison approach, Biggers adjusted the sales price for the comparable sales to account for their superior location (away from the plant). In determining the adjustment percentage, Biggers relied on his experience and his research on marketability of other properties near the Franklin Plant.

♦ Appraisal Report for Morris & Janice Sweatman. Biggers Dep. Ex. 204, ECF No. 127-25. Biggers analyzed the property's value using the market data approach (sales comp), the income approach, and the summation (cost) approach. He concluded that the market data approach was the best indicator of market value for the Sweatmans' home and poultry farm.

♦ Appraisal Report for Roger & Gerry Wilson. Biggers Dep. Ex. 205, ECF No. 127-26. Biggers analyzed the property's value using the cost approach and the sales comparison approach. For the sales comparison approach, Biggers adjusted the sales price for the comparable sales to account for their superior location (away from the plant). In determining the adjustment percentage, Biggers relied on his experience and his research on marketability of other properties near the Franklin Plant.

♦ Appraisal Report for Jeff Powers & Terrie Jo Alexander. Biggers Dep. Ex. 206, ECF No. 127-27. Biggers analyzed the property using only the sales comparison approach. Biggers adjusted the sales price for the comparable sales to account for their superior location (away from the plant). In determining the adjustment percentage, Biggers relied on his experience and his research on marketability of other properties near the Franklin Plant.

♦ Appraisal Report for Donnie Gettys. Biggers Dep. Ex. 213, ECF No. 127-34. Biggers analyzed the property using only the sales comparison approach. Biggers adjusted the sales price for the comparable sales to account for their superior location (away from the plant). In determining the adjustment percentage, Biggers relied on his experience and his research on marketability of other properties near the Franklin Plant.

♦ Appraisal Report for Max & Sue Pruitt. Biggers Dep. Ex. 215, ECF No. 127-36. Biggers analyzed the property using only the sales comparison approach. Biggers adjusted the sales price for the comparable sales to account for their superior location (away from the plant). In determining the adjustment

percentage, Biggers relied on his experience and his research
on marketability of other properties near the Franklin Plant.

♦ Appraisal Report for Dennis & Gwen McCall.  Biggers Dep. Ex.
197, ECF No. 127-18.  Biggers analyzed the property's value
using the market data approach (sales comp), the income
approach, and the summation (cost) approach.  He concluded
that the market data approach was the best indicator of market
value for the McCalls' home and poultry farm.

♦ Appraisal Report for Arlen & Angela Hart.  Biggers Dep. Ex.
201, ECF No. 127-22.  Biggers adjusted the sales price for
the comparable sales to account for their superior location
(away from the plant).  In determining the adjustment
percentage, Biggers relied on his experience and his research
on marketability of other properties near the Franklin Plant.

♦ Appraisal Report for Nathaniel Langston.  Biggers Dep. Ex.
189, ECF No. 127-10.  Biggers adjusted the sales price for
the comparable sales to account for their superior location
(away from the plant).  In determining the adjustment
percentage, Biggers relied on his experience and his research
on marketability of other properties near the Franklin Plant.

In summary, the Court is satisfied that Plaintiffs adequately
established that Biggers's methodology is based on methods
accepted by certified real estate appraisers.  Defendants do not
dispute that Biggers opines that these nine properties are worth
less than they would be but for the Franklin Plant.  The Court
finds that Defendants' present criticisms of Biggers's appraisal
reports go to the weight of his testimony, not its admissibility.
Accordingly, Defendants' motion to exclude Biggers is denied to
the extent set forth above.[6]

---

[6] This ruling shall not prevent Defendants from filing a motion in limine
before trial to address with specificity the nine appraisal reports.

## II.  Plaintiffs' Nuisance Claims

The Court now turns to the merits of Plaintiffs' claims. Plaintiffs assert that the Franklin Plant is a nuisance because it emits excessive sounds, odors, light, and smoke. Defendants contend that there is no nuisance as a matter of law because their operation of the plant is legal. In the alternative, Defendants argue that the Franklin Plant cannot be considered a continuing nuisance after June 2021 under Georgia's "right to farm" statute and that their noise reduction measures eliminated any nuisance by April 2022. The Court addresses each issue in turn.

### A.  Is There Evidence that the Plant Was a Nuisance?

In Georgia, a "nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." O.C.G.A. § 41-1-1. "The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man." *Id.* The Georgia Court of Appeals, though, has concluded that where an "act is lawful in itself, it becomes a nuisance only when conducted in an illegal manner to the hurt, inconvenience or damage of another." *Kempton v. S. Flavor Real Est., L.P*, 866 S.E.2d 862, 863 (Ga. Ct. App. 2021) (quoting *McBrayer v. Governors Ridge Off. Park Ass'n*, 860 S.E.2d 58, 62 (Ga. Ct. App. 2021)). So, if a company obtains "all necessary licenses and permits" and is

authorized by law to operate the facility within the site's zoning restrictions, it can only become a nuisance if it is "conducted in an illegal manner." *Id.* (quoting *Effingham Cnty. Bd. of Comm'rs v. Shuler Bros.*, 595 S.E.2d 526, 528 (Ga. Ct. App. 2004)).

For example, a greenhouse with automated lights that caused light pollution to a neighbor was not a nuisance because its owner "obtained all necessary licenses and permits and was authorized by law to operate the greenhouse on the site zoned for agricultural use" and there was "no evidence that the greenhouse was operated in an illegal manner." *Id.* Similarly, a woodchip mill was not a nuisance because its owner was operating the chip mill "in a location specifically negotiated and rezoned for the operation of a chip mill" and there was no evidence that the owner "operated the chip mill in an illegal manner." *Shuler Bros.*, 595 S.E.2d at 528.

Plaintiffs, though, contend that the Franklin Plant *is* a nuisance even though it was operated within the site's zoning restrictions, relying on a line of cases concluding that an injunction is warranted where the proposed placement of a business is inconsistent with the surrounding residential area. Those cases establish that a legal facility cannot be a nuisance *per se* but "that a lawful business may, by reason of its location in a residential area," be a nuisance *per accidens*. *Galaxy Carpet Mills, Inc. v. Massengill*, 338 S.E.2d 428, 429 (Ga. 1986)

(affirming jury verdict in favor of homeowners where a carpet dye plant in a "predominantly residential" area began using coal-fired boilers that emitted soot, ash, and loud noises); *Superior Farm Mgmt., L.L.C. v. Montgomery*, 513 S.E.2d 215, 218 (Ga. 1999) (affirming injunction halting the construction of a commercial hog breeding facility in a residential area); *May v. Brueshaber*, 466 S.E.2d 196, 196-97 (Ga. 1995) (reversing directed verdict in favor of landowner who sought to build two chicken houses that would hold 30,000 chickens each, concluding that neighboring homeowners established a fact dispute on whether they were entitled to injunctive relief); *Poultryland, Inc. v. Anderson*, 37 S.E.2d 785, 791 (Ga. 1946) (permitting nuisance *per accidens* claim against hog and chicken feed plant in a populous area of Gainesville, Georgia "in the midst of . . . places of business and homes"); *McGowan v. May*, 196 S.E. 705, 705 (Ga. 1938) (affirming injunction against threatened establishment of funeral home in residential neighborhood).

Plaintiffs, however, did not point to any authority applying this "improper residential placement" rule to a facility that is established consistent with preexisting zoning rules like the Franklin Plant was, in an area that is not primarily residential. Plaintiffs do not dispute that the Franklin Plant site was zoned commercial industrial. They also do not dispute that most of the property within a one-mile radius of the Franklin Plant is zoned

agricultural or agricultural intensive, though some properties are
zoned rural residential, institutional district, or heavy
industrial.  Thus, the Court finds that the "improper residential
placement" rule does not apply here.  Accordingly, the Franklin
Plant is only a nuisance if it is "conducted in an illegal manner
to the hurt, inconvenience or damage of another."  *Kempton*, 866
S.E.2d at 863 (internal quotation marks and citation omitted).

Plaintiffs argue that there is evidence from which a jury
could conclude that Defendants operated the Franklin Plant in an
illegal manner.  They presented evidence that Franklin County found
a violation of its nuisance ordinance when the Franklin Plant had
noise levels that were not "below 60-70 decibels at the boundary
of the property and within the two-mile radius of the operation."
Notice of Violation at 1.[7]  They also presented evidence from which
a jury could find that the Franklin Plant routinely had lengthy,
loud steam releases—with measured sound levels of more than 80
dBAs in February 2020—even though there should not be more than
two steam releases per year if the plant is operating normally.
And they presented evidence from which a jury could find that
emissions of particulate matter from the Franklin Plant exceeded
legal limits for at least several months between November 2019 and

---

[7] Defendants appear to suggest that the Franklin County nuisance
ordinance is too vague to be applied here, but they do not dispute that
Franklin County specifically found a violation.

March 2020.   Letter from S. Taylor to C. Davis (Apr. 2, 2020).
For these reasons, the Court denies Defendants' summary judgment
motion on Plaintiffs' nuisance claims based on noise (including
vibrations caused by low frequency sound waves) and emissions of
particulate matter.[8]   The next question is whether Plaintiffs
pointed to enough evidence to create a genuine fact dispute as to
whether the nuisance continued past certain dates.

> B.   Is There Evidence that the Plant Was a Continuing
> Nuisance After June 2021?

Defendants contend that Georgia's "right to farm" statute,
O.C.G.A. § 41-1-7(d), applies and that the Franklin Plant could
not be considered a nuisance after it was in operation for two
years in June 2021.   Pretermitting the question whether the
commissioning period counts as being "in operation" and the
question whether electricity generated by burning wood chips is a
"forest product" such that the Franklin Plant is covered under the
statute, this defense to nuisance actions "shall not apply when a
nuisance results from the negligent, improper, or illegal

---

[8] Defendants argue that any odors, smoke, or light produced by the
Franklin Plant are the necessary consequences of the plant's operations
and did not rise to the level of a nuisance.  Plaintiffs did not clearly
point to evidence that the levels of light are unreasonable or that they
caused any specific Plaintiff hurt or inconvenience.  They also they did
not demonstrate that simply emitting light constitutes a nuisance.
Plaintiffs also did not clearly point to evidence that any smoke or odors
from the plant were a nuisance for any specific Plaintiff under the
Franklin County ordinance—except to the extent that smoke from the plant
contained unreasonable particulate matter.   Accordingly, the Court
focuses its analysis on Plaintiffs' nuisance claims based on sound and
particulate matter emitted from the Franklin Plant.

operation of any such facility or operation." *Id.* As discussed above, Plaintiffs presented evidence that the Franklin Plant routinely had lengthy, loud steam releases until at least September 2021 even though the Franklin County Commission had warned that noise levels above "reasonable" levels (60-70 dBAs) were considered a nuisance under the nuisance ordinance. And, as discussed in more detail below, some Plaintiffs also presented evidence that low frequency sounds from the Franklin Plant produce vibrations so strong that they rattle windows and pictures in their homes. Accordingly, genuine fact disputes preclude summary judgment on this defense.

### C. Is There Evidence that the Plant Is a Continuing Nuisance for Certain Plaintiffs After September 2021?[9]

It is undisputed that Defendants installed a silencer at the Franklin Plant in September 2021. Defendants pointed to evidence that by November 2021, sound levels at the fence line of the Franklin Plant had been reduced to below 70 dBAs. Brewe Report § 6.3. Plaintiffs, though, argue that the nuisance caused by noises from the plant was not abated for any of them. They point to evidence that Nelson's post-September 2021 measurements

---

[9] In their brief, Defendants argue that there is no evidence demonstrating a continuing nuisance after April 2022, but the main evidence they cite is § 6.3 of their sound expert's report, which documents fence-line sound measurements taken in November 2021, after the silencer was installed in September 2021 but before the fuel drying fans were retired in April 2022. Defendants did not clearly point to additional changes to the noise levels following retirement of the drying fans in April 2022.

revealed noise above 70 dBAs at six of the Plaintiffs' properties. Nelson Report 19, Table 7, ECF No. 42-2.  Thus, there is a genuine fact dispute on whether the noise nuisance continued after September 2021 for Gettys, Nesmith, Powers, Pruitt, Sweatman, and Wilson.

Nelson only took measurements from six properties closest to the plant after installation of the silencer because he "wanted to minimize the impact of weather variations."  Nelson Dep. 217:1-4; see also Nelson Report 19, Table 7.  Nelson testified that noise levels stayed the same or were marginally worse "across the properties [his team] measured," and he said it was "likely that the same pattern continues in other places," but he "did not specifically study that."  Nelson Dep. 220:14-24.

Plaintiffs argue that they should not have to make additional recordings to determine the effectiveness of remedial measures. But Plaintiffs are claiming that a nuisance continued after the remedial measures were installed, and Defendants pointed to evidence that their mitigation measures worked to the extent that their onsite measurements were within Franklin County's prescribed noise limits.  Thus, Plaintiffs must point to evidence that the nuisance indeed continued after the mitigation measures were installed—that sound emanating from the Plant was observed at an unreasonable level on their property or that a reliable model predicted an unreasonable noise level based on actual measurements

taken at different properties.  Plaintiffs did not clearly point

to evidence that Nelson completed any modeling to determine the

impact the silencers had on noise at any properties other than the

six where he took measurements, and Plaintiffs did not point to

any evidence that Nelson disclosed an opinion about the post-

September 2021 noise levels at the locations other than those he

measured.[10]  Without such evidence, Plaintiffs did not establish a

genuine fact dispute that the noise nuisance continued after

September 2021 for Plaintiffs other than Gettys (3:21-cv-53),

Nesmith (3:21-cv-43), Alexander and Powers (3:21-cv-46), Pruitt

(3:21-cv-55), Sweatman (3:21-cv-44), and Wilson (3:21-cv-45).[11]

Thus, Defendants are entitled to summary judgment on the continuing

noise nuisance claims of Abbs (3:21-cv-52), Ayers (3:21-cv-49),

Baker (3:21-cv-48), Mark and Mayra Blalock (3:21-cv-50), Michael

Blalock (3:21-cv-51), Dickens (3:21-cv-64), Elrod (3:21-cv-47),

Harris (3:21-cv-63), Hart (3:21-cv-62), Higgins (3:21-cv-60),

---

[10] Plaintiffs note that Table 15 of Nelson's Report is a "Sound Pressure Level Forecast" that models the sound pressure levels expected based on propagation to a certain location.  Nelson Report 21; Nelson Dep. 228:3-10.  According to Nelson, those measurements were "pre silencer modification."  Nelson Dep. 228:9-10.  Plaintiffs did not clearly point to evidence of what the Sound Pressure Level Forecast means or demonstrate that it establishes unreasonable sound levels post-silencer at the locations other than those where Nelson measured the sound.

[11] Plaintiffs point out that they produced recordings of noise coming from the Franklin Plant as part of their supplemental discovery responses between May and November 2022.  But Plaintiffs did not point to evidence establishing that the noise levels were unreasonable.  The Court reviewed the sample recordings that Plaintiffs submitted to the Court (from Bellamy, Jinks, Gettys, Powers, and Wilson), but there is no context for these recordings from which the Court can tell how loud or unreasonable the noises were.

Jinks (3:21-cv-61), Langston (3:21-cv-65), McCall (3:21-cv-59), Millen (3:21-cv-42), O'Connor (3:21-cv-58, Pearcy (3:21-cv-57), Schiffer (3:21-cv-56), and Smith (3:21-cv-54).  The parties also did not point to any evidence that any air quality nuisance continued after Defendants entered the consent order in June 2020. So, to the extent that Plaintiffs assert continuing nuisance claims based on air quality violations, Defendants are entitled to summary judgment on such claims.

D.   Is There Evidence that the Plant Caused Vibrations that Amounted to a Nuisance?

In addition to their nuisance claims based on noises from the Franklin Plant, Plaintiffs assert that low frequency sounds cause perceptible vibrations that amount to a nuisance.  Defendants contend that most of the Plaintiffs did not present evidence to create a genuine fact dispute on nuisance caused by vibrations, and the Court agrees.  Defendants presented undisputed evidence that the following Plaintiffs did not suffer damages from vibrations associated with the Franklin Plant: Sweatman (3:21-cv-44); Bellamy (3:21-cv-52); Pruitt and McKenzie (3:21-cv-55); O'Connor (3:21-cv-58); Higgins (3:21-cv-60).  In addition, Plaintiffs' own sound expert testified that it was unlikely that Plaintiffs would experience perceptible vibrations if they had structures more than half a mile from the Franklin Plant (or no structures on their property).  The following Plaintiffs did not

point to any evidence to show that they *did* experience vibrations that amounted to a nuisance: Millen (3:21-cv-42); Elrod (3:21-cv-47); Baker (3:21-cv-48); Ayers (3:21-cv-49); Mark and Mayra Blalock (3:21-cv-50); Michael Blalock (3:21-cv-51); Smith (3:21-cv-54); Schiffers (3:21-cv-56); O'Connor (3:21-cv-58); Jinks (3:21-cv-61); Harris (3:21-cv-63); and Dickens (3:21-cv-64).[12]

Some Plaintiffs outside the half-mile radius did present evidence that they experienced vibrations that caused them harm or inconvenience. The Pearcys noticed vibrations that caused rattling of the windows of their home and pictures on their walls. G. Pearcy Dep. 22:1-25, ECF No. 95. And the Harts noticed vibrations that they believe caused their heating and air unit to come off its frame. Angela Hart Dep. 25:5-26:3, ECF No. 115. The Court thus finds that genuine fact disputes exist on the nuisance claims of the Harts (3:21-cv-62) and the Pearcys (3:21-cv-57) based on vibrations caused by the Franklin Plant, so Defendants' summary judgment motion on this issue is denied. Defendants did not clearly move for summary judgment on the vibration-based nuisance claims asserted by the following Plaintiffs, so those claims remain pending for trial: Nesmith (3:21-cv-43), the Wilsons (3:21-cv-45),

---

[12] Plaintiffs pointed to evidence that the Jinkses and Kenneth Dickens felt vibrations at their properties, but Plaintiffs did not point to evidence that the vibrations caused rattling of windows or items in their homes or otherwise caused them harm or inconvenience. V. Jinks Dep. 20:11-16, ECF No. 125; B. Jinks Dep. 44:18-45:3, ECF No. 114; Dickens Dep. 28:9-14, ECF No. 120.

Alexander and Powers (3:21-cv-46), Gettys (3:21-cv-53), the McCall
(3:21-cv-59), and the Langstons (3:21-cv-65). Defendants did not
point to any evidence that the vibrations have been abated, so
these claims are for continuing nuisance.

## III. Plaintiffs' Negligence Claims

Defendants contend that the Court should grant summary
judgment on Plaintiffs' negligence claims because Plaintiffs have
no expert evidence that Defendants failed to operate the Franklin
Plant in a reasonable manner.[13] But, as discussed above, Plaintiffs
rely on the testimony of Nelson, a mechanical engineer who opines
(among other things) that Defendants did not adequately consider
noise when designing the plant, did not install reasonable noise
controls, and continued to operate the Franklin Plant without
reasonable noise controls. Defendants' summary judgment motion on
this ground is denied.

## IV. Claims of the Individual Plaintiffs

Defendants contend that even if there are genuine fact
disputes as to the nuisance and negligence claims brought by some
Plaintiffs, other Plaintiffs have failed to point to sufficient
evidence to create a genuine fact dispute on their claims.
Plaintiffs contend that this portion of Defendants' motion is

---

[13] Veolia also contends that it had no duty to Plaintiffs, but it pointed
to no authority that it is exempt from the common law duty an owner or
occupier of property has not to interfere with the property rights of
its neighbors.

merely a premature motion in limine, not an appropriate summary judgment motion.  The Court disagrees.  The point of a summary judgment motion is to determine whether a trial is necessary; if there is no genuine fact dispute and the defendant is entitled to judgment as a matter of law on a claim, then there is no need for a trial on that claim.  So, Rule 56 requires that if a defendant shows that a plaintiff cannot produce admissible evidence to support a fact, the plaintiff must respond with evidence that *does* support that fact.  Failure to do so may justify summary judgment. The Court will thus consider Defendants' arguments on the merits of each Plaintiff's claim, many of which relate to the issue of damages.[14]

There are two main measures of damages for Plaintiff' nuisance and negligence claims: damages for injury to the property and damages for injury to the person.  In general, for injury to property, "diminution of fair market value is the measure of property damages for permanent nuisance and lost rental value [for the time during which the nuisance persisted] is the measure of property damages for abatable nuisance." *Waters*, 574 S.E.2d at 642; *accord Holt*, 470 S.E.2d at 241; *see also Oglethorpe Power Corp. v. Est. of Forrister*, 774 S.E.2d 755, 768 (Ga. Ct. App. 2015)

---

[14] Defendants argue that they are entitled to summary judgment because Plaintiffs did not disclose a computation of damages.  The Court finds that Plaintiffs adequately disclosed the basis for their damages claims because they disclosed that they are seeking damages for diminution in value and for discomfort and annoyance.

(explaining that the measure of damages for injury to property is the reasonable value of the lost use of the land during the nuisance).  Damages for injury to the person are available to occupiers of land who experience "discomfort, loss of peace of mind, unhappiness and annoyance" caused by the nuisance. *Oglethorpe Power Corp.*, 774 S.E.2d at 767 (internal quotation marks and citation omitted).  With these standards in mind, the Court turns to the summary judgment motions on the individual Plaintiffs' claims.

A.  <u>Agnes Millen (3:21-cv-42)</u>

Agnes Millen's property is a vacant tract of land.[15]  It is undisputed that Millen did not visit the property for years before the Franklin Plant was built or at any time after the plant began operations.  She did not experience any noise, odor, or smoke, so she may not recover damages for discomfort, loss of peace of mind, unhappiness, and annoyance.  And, although Millen argues that she is entitled to diminution in value, she did not point to evidence that any nuisance continued after September 2021.  Thus, the only "injury to property" damages she may recover are those authorized for an abatable nuisance.  Millen did not point to evidence of such damages, and she did not assert that she disclosed such

---

[15] Millen died while this action was pending, and the co-executors of her estate are proceeding with the action.  For the sake of simplicity, the Court refers to these claims as Millen's.

evidence to Defendants.  Without damages evidence, Millen's claims fail.  Defendants are entitled to summary judgment on her claims.

### B.   The Bellamys (3:21-cv-52)

The Bellamys moved to their property in 2020, after the Franklin Plant began operations.  They purchased the property in 2021, with full knowledge of the Franklin Plant and the fact that the plant emitted certain noises.[16]  Defendants contend that the Court should grant summary judgment as to the Bellamys' claim because a nuisance claim is barred as to "conditions existing upon the property at the time of purchase." *Wiggin v. Horne*, 512 S.E.2d 247, 248 (Ga. 1999).  In an attempt to save their claims, the Bellamys argue that the plant started making new noises in June of 2021, but they did not point to any evidence that these noises amounted to a nuisance in terms of their decibel level and frequency.  They also did not point to evidence that any noise nuisance continued after September 2021.  Accordingly, Defendants are entitled to summary judgment on the Bellamys' claims.

### C.   The "Continuing Nuisance" Plaintiffs

As discussed above, genuine fact disputes exist on whether the following Plaintiffs suffered a nuisance that continued after

---

[16] The Bellamys assert that they reasonably relied on a May 2019 conversation between the previous occupier of the property (Linda Abbs) and one of Defendants' employees about potential noise and dust from the plant, but they did not point to any evidence that anyone ever told them about the conversation.  Thus, it is unclear how they could have reasonably relied on it—particularly given that the conversation apparently took place before the plant even opened.

September 2021: Nesmith (3:21-cv-43 – noise and vibrations), the Sweatmans (3:21-cv-44 – noise only), the Wilsons (3:21-cv-45 – nose and vibrations), Powers and Alexander (3:21-cv-46 - noise and vibrations), the Gettyses (3:21-cv-53 – noise and vibrations), the Pruitts and Christy McKenzie, (3:21-cv-55 - noise only), the McCalls (3:21-cv-59 – vibrations only), the Harts (3:21-cv-62 – vibrations only), and the Langstons (3:21-cv-65 – vibrations only). Defendants seek summary judgment on their claims for diminution in value, asserting that these Plaintiffs do not have any evidence to prove diminution. But, as discussed above, they may rely on Biggers's expert opinion to do so. Defendants' summary judgment motions on these Plaintiffs' claims are denied.[17]

D.   The Remaining Plaintiffs

Defendants argue that they are entitled to summary judgment on the remaining Plaintiffs' claims based on a continuing nuisance that persisted after September 2021. These Plaintiffs are the Elrods (3:21-cv-47), Sheila Baker (3:21-cv-48), Brandon Ayers (3:21-cv-49), Mark & Mayra Blalock (3:21-cv-50), Michael Blalock (3:21-cv-51), Linda Abbs (3:21-cv-52), the Smiths (3:21-cv-54),

---

[17] Defendants also assert that Nesmith cannot recover for "personal injuries" caused by the plant because he testified during his deposition that he was not alleging any personal injuries. While Nesmith may not be making a claim for *bodily* injuries, he is clearly making a claim for discomfort, loss of peace of mind, unhappiness, and annoyance. Defendants further contend that the McCalls cannot recover for a continuing nuisance because they sold their property in 2020, but the McCalls pointed to evidence that although they entered a purchase agreement, they continue to own the property.

the Schiffers (3:21-cv-56), the Pearcys (3:21-cv-57), Bruce
O'Connor (3:21-cv-58), the Higginses (3:21-cv-60), the Jinkses
(3:21-cv-61), the Harrises (3:21-cv-63), and Kenneth Dickens
(3:21-cv-64). As discussed above, these Plaintiffs did not present
evidence that they experienced vibrations that amounted to a
nuisance, and they did not demonstrate that any noise nuisance
continued to affect them after September 2021. In the absence of
a permanent nuisance, diminution damages are not recoverable, and
the only "injury to property" damages these Plaintiffs may recover
are those authorized for an abatable nuisance. These Plaintiffs
did not point to evidence of such damages, and they did not assert
that they disclosed such evidence to Defendants. They may still
recover damages for discomfort, loss of peace of mind, unhappiness
and annoyance.

## V.    Plaintiffs' Punitive Damages Claims

Plaintiffs claim that punitive damages are warranted for
Defendants' conduct and that attorney's fees should be awarded
under O.C.G.A. § 13-6-11. Defendants contend that there is no
evidence from which a jury can conclude that they acted with the
requisite intent for punitive damages or an award of litigation
expenses. "Punitive damages may be awarded in tort actions in
which clear and convincing evidence proves that a defendant's
'actions showed willful misconduct, malice, fraud, wantonness,
oppression, or that entire want of care which would raise the

presumption of conscious indifference to consequences.'" *Tyler v.
Lincoln*, 527 S.E.2d 180, 182 (Ga. 2000) (quoting O.C.G.A. § 51-
12-5.1(b)).  And litigation expenses under O.C.G.A. § 13-6-11 may
only be awarded "where the defendant has acted in bad faith, has
been stubbornly litigious, or has caused the plaintiff unnecessary
trouble and expense." O.C.G.A. § 13-6-11.

Punitive damages are authorized for a "claim of continuing
nuisance." *Tyler*, 527 S.E.2d at 183.  And, failing to heed
persistent complaints about a continuing nuisance may amount to
bad faith justifying attorneys' fees.  In *Tyler*, for example, the
Georgia Supreme Court reversed the grant of summary judgment in
favor of developers on the plaintiffs' claims for punitive damages
and litigation expenses because there was evidence that "the
developers had not taken adequate soil erosion control measures"
within their development; that the development's "drainage system
was designed in a manner that would increase the runoff of storm
water onto" the plaintiffs' property; and that the plaintiffs
repeatedly asked the "developers to correct the problems, but
failed to get them to take any action to remedy the situation and
the ongoing damage." *Id.*  Here, there is evidence from which a
jury could conclude that Defendants did not take adequate measures
to control noise (including low frequency sounds) from the Franklin
Plant, that Plaintiffs repeatedly asked Defendants to fix the
problems, and that Defendants never fixed the problems for some

Plaintiffs.   The Court thus denies Defendants' summary judgment motion on punitive damages and attorneys' fees as to the "Continuing Nuisance" Plaintiffs but grants the motion as to the rest of the Plaintiffs.

CONCLUSION

In summary, the Court denies Defendants' motions to exclude the expert testimony of Nelson (ECF Nos. 42 & 49) and Biggers (ECF Nos. 44 & 50).   The Court grants in part and denies in part Defendants' summary judgment motions to the extent set forth above (ECF Nos. 48 & 51).   The Court plans to try this action during the Court's next Athens trial term, which is scheduled to begin on October 30, 2023, with a pretrial conference in early October 2023. The Court will send a pretrial notice closer to the pretrial conference date.   In the meantime, if either party wishes to take additional sound recordings to preserve them for trial as evidence of the current noise levels emitted from the Franklin Plant, the parties shall confer in good faith to develop a reasonable process and schedule for doing so.   This ruling shall not permit Plaintiffs to resurrect continuing nuisance claims on which summary judgment has been granted.

IT IS SO ORDERED, this 16th day of June, 2023.

s/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA